## In re Quechee Lakes Corporation

[580 A.2d 957]

No. 87-108

Present: Allen, C.J., Gibson, Dooley and Morse, JJ., and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed July 13, 1990

*C. Daniel Hershenson* and *Claude T. Buttrey* (On the Brief) of *Hershenson, Carter, Scott and McGee,* Norwich, for Appellant Quechee Lakes Corp.

*Darby, Laundon, Stearns & Thorndike,* Waterbury, for Appellant Ridge Condominiums, Inc.

*Jeffrey L. Amestoy,* Attorney General, and *John H. Hasen,* Assistant Attorney General, Montpelier, for Appellee.

**Allen, C.J.** Quechee Lakes Corporation appeals from an Environmental Board decision requiring substantial modifications in its already-constructed Ridge condominium project. We affirm.

In 1981, Quechee Lakes Corporation (Quechee) obtained an Act 250 land use permit to build a twenty-eight-unit condominium project on a high ridge overlooking the Quechee valley. During the course of construction, a number of revisions to the architectural plans were made without additional permit procedures. The external changes included the addition of skylights, the enlargement of sliding glass doors, the addition of clerestory and other windows, a fourteen-foot increase in the depth of three of the six buildings, the addition of four-foot overhangs and wrap-around decks, a reduction of roof pitches, and the relocation of some buildings.

Only after construction had been completed did Quechee file an application for an amended land use permit, seeking to bring its original permit into conformity with the project as built. By this time, most of the condominium units had been sold.

The District Environmental Commission held hearings on the alterations and approved them in many respects. Certain of the changes were found to be objectionable, however, and the Commission conditioned the amended permit on four mitigating actions: the removal of the skylights, the installation of nonglare glass, the addition of tree plantings, and the installation of a barrier on the access road.[1]

Quechee appealed to the Environmental Board, objecting only to the skylight removal condition and the Commission's denial of its motion for reconsideration. Ridge Condominiums, Inc. (RCI), an association composed of the project's unit owners, was granted co-applicant status by the Board and brought a cross-appeal, challenging all of the mitigation condi-

---

[1] The Commission was "frankly dismayed" to find that further changes had been made to the project after the commencement of the amended permit application proceedings, including the addition of the access road.

tions imposed by the Commission. After a de novo hearing and two site visits, the Board found that the condominium buildings are "one of the most visually prominent features in the valley." The Board found further that, taking the skylights and additional glazing together, approximately two-thirds more glass was visible than was approved under the original plans; that light from the windows and skylights is visible from many points in the valley at night; and that reflective glare from these sources results in a significant visual impact even during cloudy days. The Board also found that some of the other construction changes increased the perceived mass of the project.

In its conclusions of law, the Board stated that it was not possible to judge the adverse impact of the changes "without first considering the context within which they occur, which is the Ridge project itself." Concluding that certain of the changes at issue contributed to the overall negative visual impact of the project, the Board required the following remedial steps: the removal of skylights on the western roof slopes of Buildings 1–5, the limitation of the total glass area or screening by means of solid balcony railings, and the addition of plantings to break up the mass of the buildings and to restore the screening effect required by the original permit.

Quechee appeals from the Board's decision,[2] raising the following issues: (1) whether the Board erred in conducting hearings without requiring that the individual unit owners be made co-applicants; (2) whether the Board's mitigation conditions are reasonable; (3) whether the Board erred in basing its decision on observations made during site visits; (4) whether the parties opposing the permit satisfied their burden of proof; (5) whether the Board's decision is supported by substantial evidence; (6) whether the hearing before the Board was fundamentally fair; and (7) whether the landscaping condition of the permit violates principles of res judicata.

---

[2] RCI also appeals from the decision, joining in Quechee's brief on all but the first issue.

I.

With respect to Act 250 permit applications, the Environmental Board's Rule 10(A) provides, in part:

> The record owner(s) of the tract(s) of involved land shall be the applicant(s) or co-applicant(s) unless good cause is shown to support waiver of this requirement. The application shall list the name or names of all persons who have a substantial property interest . . . .

Here, most of the condominium units had been purchased by third parties prior to the filing of the permit amendment application. Because the unit owners own the common elements jointly, they were the record owners of the involved land at the time the amendment application was filed. Quechee concedes that it lacks standing to assert due process claims on behalf of the unit owners, but it argues that the Board's failure to require the unit owners to be made co-applicants was a violation of its own regulations, that the violation was jurisdictional and that the Board's decision is fatally flawed. It requests a remand to determine whether good cause can be shown to exclude the record title owners as applicants or co-applicants.

Rule 10(A) permits a waiver of the requirement that record owners of involved land be made applicants or co-applicants for good cause shown. The Board carefully considered the relationship between RCI and the unit owners and made the following findings and conclusions:

> RCI requested party status as a co-applicant in the Ridge proceedings. RCI is an association composed of the owners of units within the Ridge Condominiums. RCI was formed in 1982 and, as of August 1, 1984 when QLC filed amendment application # 3W0364-1A-EB, 25 of the 28 units within the project had been conveyed by QLC to third party members of RCI. Ridge unit owners have designated RCI to represent their interests in the Board proceedings. The issues presented in the Ridge appeal implicate the property interests of unit owners: conditions imposed by the Commission would require physical changes to condominium units. We conclude that RCI can represent the in-

terests of Ridge unit owners (see Board Rule 14(D)) and those owners have a substantial property interest in the land involved in the Ridge project within the meaning of Board Rule 10(A). We will, therefore, exercise the discretion afforded to the Board by the latter Rule and will admit RCI as a co-applicant to these proceedings.[3]

■ The Board recognized that the owners had a substantial interest within the meaning of the Rule and that the owners had designated RCI to represent their interests in the Board proceedings. The admission of RCI as a co-applicant constituted a waiver by the Board, and it is unnecessary to remand for a determination that has already been made. Both practicality and fairness applaud the Board's action, and we give particular weight to the interpretation of a regulation by an administrative agency. *In re Hydro Energies Corp.*, 147 Vt. 570, 574, 522 A.2d 240, 242 (1987).

## II.

A permit granted by the Board "may contain such requirements and conditions as are allowable within the proper exercise of the police power and which are appropriate with respect to [the Act 250 criteria] . . . ." 10 V.S.A. § 6086(c). Quechee argues that the mitigating conditions imposed by the Board here are unreasonable and contrary to public policy, specifically contending that compliance with the conditions would require Quechee and RCI to violate the bylaws of the condominium association, to commit criminal trespass by entering the unit

---

[3] In a footnote the Board acknowledged that RCI was not a party before the district commission, explaining that the applicants had not identified "all persons with a substantial property interest" as required under Rule 10(A) and because RCI had not sought party status. But even if RCI was not a party before the district commission, it sought and obtained party status before the Board on appeal and did so as the representative of the unit owners—a fact supported on the record and found specifically by the Board.

If RCI as the representative of the unit owners believed that its omission before the district commission had rendered those proceedings a nullity, it was bound to raise that point before the Board and did not do so. Rather, it sought, and obtained, full participation before the Board and was content to receive party status then. Quechee may not complain about RCI's decision now.

owners' premises, and to materially alter buildings owned by nonparties.[4] We disagree.

The first condition of the *original* permit obtained by Quechee mandated:

> The project shall be completed as set forth in . . . the plans and exhibits stamped "Approved" and on file with the District Environmental Commission, and in accordance with the conditions of this permit. No changes shall be made in the project without the written approval of the District Environmental Commission.

Despite the unequivocal proscription, Quechee made substantial alterations during construction without seeking the Commission's approval. The Board found that some of these unauthorized changes "either singly or when considered together, have an undue adverse impact on the scenic, natural beauty and aesthetics of the area and that there were no unanticipated circumstances or other mitigating factors justifying the changes."

█ Under 10 V.S.A. § 6090(c), the Board had the power to revoke the original permit for Quechee's violation of the "no changes" condition. Instead, because the Board was "persuaded that the impacts resulting from the unauthorized changes can be substantially mitigated," it imposed the conditions Quechee now challenges. We hold that the conditions are reasonable on these facts.[5]

---

[4] In support of its proposition that permit conditions must be reasonable, Quechee cites 10 V.S.A. § 6087(b), which provides: "A permit may not be denied solely for the reasons set forth in subdivisions (5), (6) and (7) of section 6086(a) of this title. However, reasonable conditions and requirements allowable in section 6086(c) of this title may be attached to alleviate the burdens created." Because we are dealing here with subdivision (8) of § 6086(a) (undue adverse effect on . . . aesthetics), § 6086(b) is not applicable. We interpret the appropriate qualification of § 6086(c), however, to mean that any permit condition that the Board imposes must be reasonable.

[5] With respect to Quechee's "criminal trespass" contention and related arguments, we note that the unit owners, as successors in interest, are also bound by the conditions of the permit.

## III.

The Board made two site visits to the Quechee valley during the course of the proceedings, and its findings of fact and conclusions of law were based in part on observations made during these visits.[6] Quechee maintains that the Board erred in this respect, arguing that the Board's personal observations are not evidence and that, in any event, the Board failed to put the observations on the record.

■ Whether administrative fact-finders may base their findings on site visit observations is a question of first impression in Vermont. This Court has held that judicial findings can be grounded on knowledge acquired from site visits, as long as such examinations are not the exclusive basis for the findings. *Daigle v. Conley*, 121 Vt. 305, 309, 155 A.2d 744, 747–48 (1959). Other jurisdictions are split on this question. Compare *Key v. McCabe*, 54 Cal. 2d 736, 739, 356 P.2d 169, 171, 8 Cal. Rptr. 425, 427 (1960) (en banc) (trier of fact's view of an area can provide substantial, independent evidence supporting findings and conclusions), and *Dooley v. Leo*, 184 Conn. 583, 587, 440 A.2d 236, 238 (1981) (visual observation of property by trier of fact is evidence that may be considered to the same extent as any other evidence), with *Gilbert v. City of Caldwell*, 112 Idaho 386, 398, 732 P.2d 355, 367 (1987) (trial court's view of premises is not evidence). A similar split exists among jurisdictions where site visits by administrative tribunals have been at issue. Compare *Mrowka v. Board of Zoning Appeals*, 134 Conn. 149, 154, 55 A.2d 909, 912 (1947) (zoning board members entitled to consider facts gleaned from site visit to the same extent as though they had been offered into evidence), with *Koplar v. State Tax Commission*, 321 S.W.2d 686, 696 (Mo. 1959) (tax commission can take view of property to enable it to understand the evidence, but view itself cannot constitute evidence).

---

[6] Specifically, Quechee challenges the Board's findings that light emitted from the windows and skylights of the project at night is "visible from many points throughout the valley" and that the changes at issue "are clearly perceptible." Contending that no evidence on the record would support these findings, Quechee urges that they must have been based on the Board's personal observations.

■ ■ We see no reason to depart from the rule stated in *Daigle* simply because an administrative fact-finder is involved. Administrative tribunals can base their decisions on a broader, not narrower, range of evidence than courts can. See *In re Central Vermont Public Service Corp.*, 141 Vt. 284, 292, 449 A.2d 904, 909 (1982). We conclude that the Board's partial reliance on knowledge garnered from the site visits was not erroneous.

■ Quechee contends that the Board erred, nonetheless, by failing to enter its observations into the record. We agree that site visit observations on which the fact-finder intends to rely must be placed on the record in order to preserve the right of rebuttal and to facilitate review.[7] Here, however, this argument was waived because Quechee failed to raise it before the Board in a post-decision motion made under Environmental Board Rule 31.[8] Cf. *Emery v. Caledonia Sand & Gravel Co.*, 117 N.H. 441, 449, 374 A.2d 929, 934 (1977) (where court viewed premises after the close of evidence, defendant could have moved for reopening of the testimony "if it felt it had any meaningful rebuttal").

## IV.

Quechee next asks this Court to disregard the evidence produced through its own witnesses and from the Board's site visits and instead to focus upon the evidence actually introduced by the parties opposing the application. Quechee argues that this latter evidence, taken alone, was insufficient to establish that the project would have an adverse aesthetic impact. Since 10 V.S.A. § 6088(b) places the burden of proof on the parties opposed to the permit where aesthetic impact is at issue,

---

[7] Vermont's Administrative Procedure Act provides that "[t]he record in a contested case shall include . . . all evidence received or considered; . . . ." 3 V.S.A. § 809(e)(2).

[8] Rule 31(A) states, in pertinent part: "Motions to alter decisions. A party may file within fifteen days from the date of the decision such motions as are appropriate with respect to the decision." This rule provides a party with an opportunity to object, and 10 V.S.A. § 6089(c) requires that an objection be raised before the Board to preserve a claim of error for appeal.

Quechee contends that the Board erred in concluding that the project would have such an impact.[9]

This argument is founded upon fundamental misconceptions regarding the significance of § 6088 and the burden of proof concept. Act 250 establishes ten criteria that a proposed development covered by the Act must meet before a permit is granted. See *id.* at § 6086(a). Section 6088(a) provides that the permit applicant has the burden of proving compliance with six of these criteria. Subsection (b) of the statute goes on to provide that "[t]he burden shall be on any party opposing the applicant with respect to [the remaining criteria]." Among these other criteria is the one at issue here, requiring a finding that the project "[w]ill not have an undue adverse effect on . . . aesthetics . . . ." *Id.* at § 6086(a)(8).

In sum, § 6088 represents a legislative determination that the applicant should prove compliance with certain of the criteria but that any alleged burdens or impacts falling under the other criteria should be proved by the opposing parties. The statute imposes no limits, direct or indirect, on the evidence the Board is allowed to consider in deciding whether a particular issue has been proved.

■ This conclusion follows because of the nature of the burden of proof concept. The fact that a party has the burden of proof does not mean that he must necessarily shoulder it alone; it simply means that he, and not the other party, bears the risk of nonpersuasion.

> The burden of proof, i. e., the risk of non-persuasion, never shifts from the party on whom it is placed. . . . But it should be observed that the burden of proof is satisfied by the actual proof of the facts which need to be proved, *regardless of which party introduces the evidence.*

*Parish v. Maryland & Virginia Milk Producers Ass'n*, 261 Md. 618, 691–92, 277 A.2d 19, 53–54, *cert. denied,* 404 U.S. 940 (1971)

---

[9] Although the State argues persuasively that § 6088(b) does not apply to post hoc permit amendment applications and that the burden of proof should be on Quechee, our disposition of the claim of error makes an answer to this question unnecessary.

(emphasis in original). The Board was at liberty to consider all of the evidence, including that garnered during its site visits, in determining whether the opposing parties had carried their burden of proof.

## V.

Quechee argues in the alternative that the evidence—taken in its entirety—is insufficient to support the Board's findings and conclusions. We disagree.

■ Where the sufficiency of the evidence is questioned on appeal from a decision of the Board, this Court employs a deferential standard of review. See *In re Gallagher*, 150 Vt. 50, 52, 549 A.2d 637, 639 (1988). The legislature has mandated that "[t]he findings of the board with respect to questions of fact, if supported by substantial evidence on the record as a whole, shall be conclusive." 10 V.S.A. § 6089(c). This Court has defined "substantial evidence" to mean "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Baxter v. Vermont Parole Board*, 145 Vt. 644, 647–48, 497 A.2d 362, 364 (1985) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).[10] After reviewing the record as a whole, we conclude that the Board's findings and conclusions are supported by substantial evidence.

Quechee's initial argument on this point is based on the proposition that it presented uncontradicted expert testimony to the effect that the changes at issue had no adverse aesthetic impact. But this assertion simply highlights a conflict in the evidence, and, as this Court observed in a seminal Act 250 case:

> Where a conflict in the evidence develops, its resolution falls within the Board's jurisdiction, for the Board is the

---

[10] This standard of review should be distinguished from the "clearly erroneous" standard applied where this Court reviews judicial findings of fact. See generally C. Koch, Administrative Law and Practice § 9.5, at 93–96 (West 1985) (contrasting the two standards). Under the classic formulation, a finding is "'clearly erroneous' when *although there is evidence to support it*, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948) (emphasis added).

proper trier of fact. The trier of fact has the right to believe all of the testimony of any witness, or to believe it in part and disbelieve it in part, or to reject it altogether. Thus, it is not for this Court to reweigh conflicting evidence, reassess the credibility or weight to be given certain testimony, or determine on its own whether the factual decision is mistaken.

*In re Wildlife Wonderland, Inc.*, 133 Vt. 507, 511, 346 A.2d 645, 648 (1975). Instead, our focus is upon the evidence supporting the Board's findings and the question whether that evidence is adequate.

█ Because Quechee does not challenge particular findings of fact and because an exhaustive reproduction of the record here would be inappropriate, we will summarize our review of the evidence. First, the record includes both testimony and photographic evidence supporting the Board's findings concerning the significant increase in the total window area and the reflective glare caused by this increase in combination with the addition of the skylights. Second, there was evidence supporting the Board's findings that the changes had increased the perceived mass of the buildings as well as evidence that additional plantings would mitigate this effect. Finally, in addition to this evidence and the Board's own observations at the site, there was testimony that the cumulative effect of the unauthorized changes could increase the already adverse impact of the project. We hold that the record included sufficient evidence that reasonable minds could accept as adequate support for the Board's findings and conclusions.

## VI.

In its next claim of error, Quechee maintains that the Board used the permit amendment proceedings to reconsider the impact of the entire Ridge project rather than ruling on the changes at issue. Contending that the parties were not notified specifically that this would be the scope of the proceedings, Quechee argues that fundamental due process requirements were violated. Because we are not persuaded by Quechee's characterization of the proceedings, we find no error.

In support of its theory concerning the Board's focus, Quechee points to the written conclusions of law, in which the Board stated:

> The question to be decided . . . is whether the changes [Quechee] made after the District Commission had issued the original land use permit for the Ridge project resulted in an "undue adverse effect." Although the original permit is not now on appeal . . . it is not possible for the Board to judge these changes without first considering the context within which they occur, which is the Ridge project itself.

The Board went on to describe the magnitude of the adverse visual impact that the project has in the Quechee valley and the sensitive nature of the area itself, concluding that:

> If the Board were evaluating the Ridge project today, it would find that the project's impact on the scenic and natural beauty of the Quechee valley is "adverse." The Board members shared a strong negative reaction to the visual impact of the project which extended far beyond a matter of personal taste.

In addition to emphasizing these statements by the Board, Quechee highlights findings of fact that address the project as a whole and dicta used by the Board to express concern regarding the use of permit amendment procedures to correct permit violations.

To the extent that any of these gleanings from the Board's opinion appear inappropriate, it is because they are taken out of context. The Board repeatedly displayed a commendable determination to adhere to the question before it, i.e., the adverse aesthetic impact, if any, of the unauthorized changes made by Quechee. On several occasions prior to the hearing, the Board stressed that the proceedings were limited to evaluating the impacts of the project changes; in a January 3, 1986 memorandum, the chairman wrote: "I remind all parties that this appeal [to the Board] does not involve review of the Ridge project as a de novo evaluation of the original project application." This admonition was reiterated throughout the hearing.

Moreover, immediately following the passages from the Board's opinion quoted above, the Board stated:

> The question to be decided in this appeal is not whether the Ridge project itself should be denied an Act 250 permit because it causes an "undue adverse effect," but whether the *changes* constructed by [Quechee], when coupled with the original project, have such an effect. The position that [Quechee] and RCI urge upon this Board is that the impact of the changes is virtually indistinguishable from the impact of the original project, and therefore should be approved. . . . The fact remains that a 42–46% increase in glass area, plus the other changes made after the original permit was issued, do have a significant visual impact, especially when the project is located in a sensitive area.

(Emphasis in original.) We also note that one Board member was sufficiently disconcerted by the limited scope of the proceedings to file a dissenting opinion, maintaining that the Board should have gone beyond the changes themselves to consider the "different project" actually built.

We conclude that the Board acted properly in considering the impact of the unauthorized changes within the context of the entire project.[11] Its findings and conclusions relating to the project as a whole were necessary to establish a baseline from which to measure the changes at issue. The Board's analysis under the statute was restricted to these changes, and the mitigating conditions imposed under the order address only the changes and not the project originally approved. No error appears on this ground.

## VII.

Quechee also presses a due process claim based on several alleged evidentiary errors committed by the Board. The claimed errors involve the testimony of four witnesses: three interested parties and a landscape architect who submitted a landscaping plan aimed at mitigation of the adverse effects cre-

---

[11] It should be noted that two of Quechee's expert witnesses insisted on testifying regarding the changes in the context of the rest of the project.

ated by the Ridge project. Conceding that none of the cited evidentiary rulings, standing alone, would constitute reversible error, Quechee argues nonetheless that the cumulative effect of these rulings was the denial of a fundamentally fair hearing.

■ With respect to the testimony of the three interested parties, Quechee asserts that it was irrelevant, prejudicial, and highly inflammatory and that it should not have been admitted. We observe, first, that the Board repeatedly reminded these witnesses of the scope of the hearings, and, in one instance, struck objectionable testimony from the record. Moreover, because Quechee points to no finding by the Board based on the challenged evidence, it has failed to demonstrate the requisite prejudice.

■ The landscape architect's testimony stands on a different footing, however, because the Board referred to his landscaping plan in its order. Quechee objects to the admission of this evidence because the architect admitted that he had only a limited familiarity with the changes that were the subject of the hearing and because the landscaping plan was addressed to the entire project rather than to the changes alone. Hence, Quechee argues, the testimony was irrelevant and prejudicial.

We observe that the architect's testimony and plans were primarily concerned with two problems: the reflective glare caused by the additional glazing and the increase in the perceived mass of the project. Both of these needs for mitigation were created by the changes at issue. Further, even assuming that the plans otherwise addressed the entire project in some way, we hold that the Board's consideration and reliance on the plans were proper under the circumstances. If the Board believed that an overall landscape plan was the only means of mitigating the adverse impact of the unauthorized changes, then this condition was appropriate under the provisions of 10 V.S.A. § 6086(c) and the related testimony was therefore relevant.

## VIII.

Quechee's final claim of error is grounded on the doctrine of res judicata. On June 7, 1984, the Commission issued the first

amended land use permit involving the Ridge project. This permit was necessary because, in the Commission's words, "overzealous cutting of existing vegetation" had rendered compliance with the original permit impossible. The amended permit approved changes in the project's landscaping plans, and an untimely appeal of the permit was dismissed. Quechee maintains that this was a final administrative determination as to the landscaping plans and, therefore, that the additional landscaping requirements of the Board's order violate the res judicata principle.

 "The concept of res judicata embraces two doctrines, claim preclusion and issue preclusion (or collateral estoppel), that bar, respectively, a subsequent action or the subsequent litigation of a particular issue because of the adjudication of a prior action." *McClain v. Apodaca*, 793 F.2d 1031, 1033 (9th Cir. 1986). But res judicata applies only where a party seeks to relitigate the identical issues already decided. See *Stowe Center, Inc. v. Burlington Savings Bank*, 141 Vt. 634, 637, 451 A.2d 1114, 1115 (1982).

 Here, because of the unauthorized changes in the construction of the project, the landscaping issue was no longer identical to that decided by the Commission in the first permit amendment proceedings, and res judicata does not apply.[12]

*Affirmed.*

## On Motion for Reargument

**Allen, C.J.** Quechee has moved for reargument pursuant to V.R.A.P. 40, asserting that the Court's determination that the failure of the district commission and the Board to require compliance with Board Rule 10(A) was not jurisdictional was erroneous. The opinion has been clarified, and that part of the opinion that could be read as inconsistent with our holding in *In re Spencer*, 152 Vt. 330, 566 A.2d 959 (1989), has been amended.

---

[12] If Quechee's theory of res judicata were correct, then the doctrine might well have barred its first application for an amended permit, relating to changes in the landscaping, as well as the application that is the subject of this appeal.

This change does not affect the outcome of the case, and movant's other grounds for seeking reargument are without merit.

*Motion to reargue is denied.*