## In re Chester P. and Bertha G. Denio

[608 A.2d 1166]

No. 89-214

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed April 3, 1992

232

*John D. Hansen,* Rutland, for Appellants.

*Jeffrey L. Amestoy,* Attorney General, *Ron Shems,* Assistant Attorney General, and *David K. Mears,* Law Clerk (On the Brief), Montpelier, for amicus curiae State.

**Dooley, J.** Appellants Chester and Bertha Denio appeal a decision of the Vermont Environmental Board granting an Act 250 permit for a three-lot subdivision adjacent to an already existing 71-lot subdivision, but imposing twenty conditions. The De-

nios contest the Board's exercise of jurisdiction and claim that the Board (1) misallocated the burden of proof on the issue of aesthetics; (2) made findings of fact and conclusions of law which were not based exclusively on the evidence before it and were erroneous; and (3) set unreasonable conditions for the new lots. We affirm.

In 1972, appellants purchased approximately 263 acres in Shaftsbury and received an Act 250 permit for a 71-lot subdivision on 200 acres. In 1987 they applied to the District Environmental Commission for a permit to subdivide an additional seven acres of their land into three lots. The Commission considered their application as an amendment to the 1972 subdivision permit, and denied it, although it detailed conditions it would impose if it were to issue a permit. Appellants then went to the Board for a de novo review of the Commission's decision, pursuant to 10 V.S.A. § 6089. After a hearing and visit to the site, the Board issued its findings of fact, conclusions of law, and an order permitting the proposed subdivision, subject to twenty conditions, on March 27, 1989. Some of the conditions imposed by the Board required that the subdivision conform to certain plans stated in the permit application, and to statements made in the Board's findings and conclusions. In part, the conditions were based on the Board's finding, under 10 V.S.A. § 6086(a)(8), that, in the absence of adherence to the conditions, the subdivision would adversely affect the aesthetics of the surrounding area.

At no point in the proceedings before the Commission and Board did any party receiving notice of the requested permit and proceedings, under 10 V.S.A. § 6085, raise objection or present evidence in opposition to the permit's issuance. And at no point in the proceedings did appellants raise an objection to the exercise of Act 250 jurisdiction over the matter by the Commission and Board.

## I.

Appellants' first claim is that the Board lacked jurisdiction over the subdivision proposal. Although this issue was not raised before either the Commission or the Board, appellants argue that subject-matter jurisdiction can be raised at any time, including for the first time in this Court. See *Boisvert v.*

*Boisvert*, 143 Vt. 445, 447, 466 A.2d 1184, 1185 (1983). We disagree that preservation is not required.

■■ Our general requirement that issues be raised in the forum from which an appeal is taken, before they are raised here, is statutorily required in Act 250 proceedings. 10 V.S.A. § 6089(c) provides:

> (c) No objection that has not been urged before the board may be considered by the supreme court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.

We have applied the statute to jurisdictional issues, although, in the case involved, *In re State Aid Highway No. 1*, 133 Vt. 4, 8, 328 A.2d 667, 669 (1974), we found "extraordinary circumstances" to allow review without preservation. More recently, we stated that "issues not raised below, even those having a constitutional dimension, need not be considered when presented for the first time on appeal." *In re Burlington Housing Auth.*, 143 Vt. 80, 81–82, 463 A.2d 215, 217 (1983). We conclude that § 6089(c) applies and prevents appellants from raising the jurisdictional issue for the first time on appeal. There are no "extraordinary circumstances" that would excuse the lack of preservation.

■ We are guided in our interpretation of the preservation statute by the law of exhaustion of administrative remedies. Requiring preservation of jurisdictional issues in an administrative forum, usually under the rubric of exhaustion of administrative remedies, is common in American law and must be viewed as an exception to the general rule that subject-matter jurisdiction can be raised at any time. Based on his analysis of United States Supreme Court opinions, Professor Davis has indicated that three factors are considered in determining whether exhaustion of administrative remedies is required with respect to a jurisdictional issue. See 3 K. Davis, Administrative Law § 20.03, at 69 (1958 ed.). Those are (1) the extent of injury from pursuit of an administrative remedy; (2) degree of apparent clarity or doubt about administrative jurisdiction; and (3) involvement of specialized administrative understanding in the question of jurisdiction. *Id.*; see also *SEC v. G.C. George Securities, Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981) (application of Davis factors).

If we were to analyze this case under the Davis factors, it is clear that exhaustion would be required. Appellants suffer no injury from pursuit of the administrative remedy; they have already obtained a ruling from the Board. In numerous cases, we have recognized the specialized expertise of the Board in determining whether it has jurisdiction over a particular development proposal. See *In re H.A. Manosh Corp.*, 147 Vt. 367, 370, 518 A.2d 18, 20 (1986) (the Court will "defer to the Board's expertise"). At best, the jurisdictional issue is close.

Analysis of the facts of the present case under the Davis factors also demonstrates that there are no extraordinary circumstances here to excuse nonpreservation of the jurisdictional issue under § 6089(c). Appellants even characterized their own proposal as an amendment to their preexisting permit, leading the Board away from a critical examination of its jurisdiction. If ever we will require preservation in the Board, this is the case to do it.

Our analysis of this particular case shows the strong policy reasons why we must apply the preservation statute to jurisdictional disputes. Moreover, the language of § 6089(c) is broad and contains no exception for jurisdictional issues. This omission is significant because for an administrative board of limited jurisdiction virtually any disagreement with its actions can be phrased in jurisdictional terms. Indeed, the vast majority of Act 250 appeals involve jurisdictional issues, and in resolving them, we have accorded "a high level of deference" to the interpretation of Act 250 by the Board. *In re Vitale*, 151 Vt. 580, 582, 563 A.2d 613, 615 (1989). If we adopt appellants' position, applicants will be able to avoid raising jurisdictional challenges before the Board, and seek a ruling for the first time in this Court if they are dissatisfied with the Board's action on the merits. As a result, the most important decisions on the scope of Act 250 will be made without involvement of the Board or its expertise. See *McKart v. United States*, 395 U.S. 185, 195 (1969) ("frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures"). We must construe the preservation statute consistent with its plain meaning as well as "'the subject matter, its effects and consequences, and the reason and spirit of the law.'" *Nash v. Warren Zoning Board of Adjust-*

*ment,* 153 Vt. 108, 112, 569 A.2d 447, 450 (1989) (quoting *In re R.S. Audley, Inc.,* 151 Vt. 513, 517, 562 A.2d 1046, 1049 (1989)). When we do, we must require preservation of all issues even if they go to the subject-matter jurisdiction of the Board. The exception for extraordinary circumstances provides a sufficient safety valve to protect against excusable failures, especially if they involve clear questions of law on which Board expertise is less important.

Because appellants had a duty to raise the issue of jurisdiction before the Board, and failed to do so, they are foreclosed by § 6089(c) from raising it here, and we need not address its merits.

## II.

■ Next, we turn to appellants' claims of substantive error by the Board. A number of these claims center around the Board's findings of fact and conclusions of law with respect to the aesthetic impact of the proposed subdivision. We note that we must affirm findings of the Board if based on "substantial evidence," 10 V.S.A. § 6089(c), which is evidence properly before the Board that is relevant and which a reasonable person might accept as adequate to support a conclusion. *In re McShinsky,* 153 Vt. 586, 589, 572 A.2d 916, 919 (1990).

Appellants first argue that the Board improperly allocated the burden of proof in finding that the subdivision would have an adverse effect on the aesthetics of the area without adherence to the permit conditions. The Board or Commission granting a permit is required to find that a subdivision "[w]ill not have an undue adverse effect on the scenic or natural beauty of the area, aesthetics . . . and irreplaceable natural areas." 10 V.S.A. § 6086(a)(8). Although the applicant has the burden of proof on many Act 250 issues, the burden of proof with respect to aesthetics is "on any party opposing the applicant . . . to show an unreasonable or adverse effect." *Id.* § 6088(b).

In this case, no opponent of the permit appeared or presented evidence before the Board. The Board's finding that adherence to its conditions would be necessary to prevent an adverse aesthetic effect was based, rather, on testimony by Chester Denio and on information gained through its visit to the site. Appellants claim that the Board was precluded from finding against

them on an issue for which they did not bear the burden of proof, particularly as no party bearing that burden ever came forward. We conclude that the Board was not so precluded.

Nothing in the language of the statute prevents the Board from finding against the applicant on an issue even though the applicant does not have the burden of proof on that issue. In fact, the statute requires the Board to make a finding on each factor, including aesthetics, irrespective of the placement of the burden of proof. *Id.* § 6086(a). In this context, the allocation of the burden of proof to opponents merely relieves the applicant of the "risk of non-persuasion," and means that in the absence of evidence on the issue, or where the evidence is indecisive, the issue must be decided in the applicant's favor. *In re Quechee Lakes Corp.*, 154 Vt. 543, 553, 580 A.2d 957, 963 (1990); see also 4 J. Stein, G. Mitchell, B. Mezines, Administrative Law § 24.01, at 24-5 to 24-8 (1991). The burden of proof allocations of Act 250 impose "no limits, direct or indirect, on the evidence the Board is allowed to consider in deciding whether a particular issue has been proved." *Quechee Lakes Corp.*, 154 Vt. at 553, 580 A.2d at 963. While the applicant never bears the risk of nonpersuasion of the Board as to the aesthetics criterion, the burden of proof is properly satisfied by the actual proof of adverse aesthetic effect, *"'regardless of which party introduces the evidence.'" Id.* (quoting *Parish v. Maryland & Virginia Milk Producers Ass'n*, 261 Md. 618, 691–92, 277 A.2d 19, 54 (1971)) (emphasis in original); see also *Burroughs Corp. v. Rocky Mt'n Prestress, Inc.*, 431 F.2d 1185, 1187 (10th Cir. 1970) (party may be relieved of burden imposed on it by fact that the necessary proof is introduced by adversary). Moreover, the rules of the Environmental Board contemplate circumstances in which no party appears in opposition to a permit issuance or no opponent presents evidence on the issues for which opponents bear the burden of proof, and permit the Board "to make reasonable inquiry as it finds necessary to make findings and conclusions as required." Vermont Environmental Board Rule 20(C). The absence of opposition does not mean that appellants automatically prevail on the aesthetics issue.

In this case, the Board properly examined the issue of aesthetics, for which it was required to make a finding, and con-

sidered substantial evidence, as discussed below, placed before it by the Denios and found by it on its visit to the site. Only if there had been no substantial evidence before the Board on the issue of aesthetics, or if it had been unable to conclude one way or the other based on the evidence before it, would the statutory burden of proof allocation have required a finding in favor of appellants.

Appellants next claim that the Board failed to comply with the requirement set forth in the Administrative Procedure Act, 3 V.S.A. § 809(g), that its findings of fact be based "exclusively on the evidence and on matters officially noticed." Their argument here is that the Board could consider only the testimony of Chester Denio and his exhibits, the only evidence taken by the Board.

Many of the findings which appellants attack are derived in part from the site visit. As long as it does not constitute the exclusive basis for the Board's decision, evidence gathered during a site visit may satisfy the burden of proof on the factors to be considered in granting an Act 250 permit. *Quechee Lakes Corp.*, 154 Vt. at 552, 580 A.2d at 962; *In re McShinsky*, 153 Vt. at 589, 572 A.2d at 918. Ordinarily, the Board is required to enter its observations from the site visit on the record to allow rebuttal and facilitate review. *Quechee Lakes Corp.*, 154 Vt. at 552, 580 A.2d at 962. Appellants waived this requirement, however, by failing to raise it in response to the Board's proposed decision. *Id.* Thus, we are unable to determine the extent to which the Board relied on the site visit and must affirm the relevant findings.

The remaining findings to which appellants object as not based upon the record are actually statements of appellants' intentions as derived from their application to the District Commission. To the extent that they are findings of fact, we find adequate support for them in the permit application and the testimony, charts and photographs before the Board. In any event, appellants' real objection to these "findings" is their use to create permit conditions.

Appellants next argue that the Board's conclusion that conditions were required to prevent an undue adverse aesthetic effect, see 10 V.S.A. § 6086(a)(8), was erroneous. The Board used the two-step analysis noted in *In re McShinsky*, 153 Vt. at 591,

572 A.2d at 919–20, in which it first determined whether the proposed subdivision would have an adverse aesthetic impact and then looked at whether that impact would be undue. It found an adverse impact from the destruction of open space in proximity to the existing development and in the visibility of the new houses to vehicles passing on Route 7A. It went on to find that this adverse effect was not undue, if the land uses would be as appellants proposed, because of the presence of an old wood barn on open land directly across the entrance road from the development site and the presence of Christmas trees on a parcel that borders Route 7A. Appellants challenge the Board's conclusion that the barn and the Christmas trees are necessary to avoid an undue adverse effect.

We emphasize that "decisions made within the expertise of an administrative agency are presumed to be correct, valid and reasonable . . . and we will normally defer to its determinations." *Vermont State Colleges Faculty Federation v. Vermont State Colleges*, 151 Vt. 457, 460, 561 A.2d 417, 419–20 (1989) (citations omitted); see also *In re Burlington Housing Auth.*, 143 Vt. at 83, 463 A.2d at 217 (Environmental Board's application of Act 250 entitled to presumption of validity). Determining the degree of adverse aesthetic effect is a matter of weighing of the evidence, a role for the Board rather than for this Court. *Quechee Lakes Corp.*, 154 Vt. at 555, 580 A.2d at 963.

The evidence here supports the Board's conclusions. As originally designed, the development was largely shielded from Route 7A. The new units will bring visibility. In addition, they will be built on open land that served as an aesthetic buffer. Other features of the appellants' property, particularly the barn and the Christmas tree farm, mitigate the degree of adverse effect as long as they remain in their current uses. We find no error in the Board's conclusions.

## III.

Appellants' final attack is on twelve of the twenty permit conditions imposed by the Board. The Board's authority to impose specific conditions on the grant of an Act 250 permit is contained in 10 V.S.A. § 6086(c), which provides:

(c) A permit may contain such requirements and conditions as are allowable within the proper exercise of the po-

lice power and which are appropriate with respect to (1) through (10) of subsection (a), including but not limited to those set forth in sections 4407(4), (8) and (9), 4411(a)(2), 4415, 4416 and 4417 of Title 24, the dedication of lands for public use, and the filing of bonds to insure compliance.

Any conditions imposed must be "reasonable." *Quechee Lakes Corp.*, 154 Vt. at 550 n.4, 580 A.2d at 961 n.4.

■ Appellants launch a barrage of objections at the permit requirements; we will not discuss each objection in detail. Appellants were given the opportunity to respond to the proposed decision of the Board, including the proposed permit conditions, and failed to raise many of the objections they raise here. To the extent appellants failed to object before the Board, they have waived their objection. 10 V.S.A. § 6089(c).

Appellants did preserve an objection to conditions Nos. 7, 8, 9 and 10. These conditions require that certain parts of appellants' 263 acres be maintained at or near their current condition. An area known as the "greenbelt" was required to be left as open space or used for "forestry or agricultural purposes." The area on which the barn is located was required to be maintained as open space. The area in which Christmas trees were being grown was required to be used for "agricultural or forestry purposes," maintaining a line of maple trees. Another line of trees immediately adjacent to the area to be developed was required to be maintained.

Most of appellants' objections are resolved by the Board's determination that the original permit implicated the entire 263 acres owned by appellants and treatment of the current proposal as an amendment to that permit. As discussed in part I of this opinion, the appellants' failure to contest that determination in the Board proceeding precludes a challenge to it here. As a result, appellants' argument that the Board is powerless to dictate the use of land outside the permit application is answered by the fact that we must accept the Board's conclusion that all of appellants' land is involved in this proceeding.

■ The conditions were imposed to leave open space in appellants' planned residential development and to implement the Board's findings on aesthetic impact pursuant to 10 V.S.A.

§ 6086(a)(8). The requirement of open space in planned residential developments for recreation and to maintain natural beauty is well accepted. See 24 V.S.A. § 4407(3). We find no basis to hold these conditions unreasonable. If circumstances change, appellants have the opportunity to seek modification of the permit as they have done here.

The last preserved objection is to condition No. 1. That condition requires appellants to complete the project consistent with the Board's findings and conclusions and the approved plans and exhibits. It goes on to state that in event of a conflict between the findings and conclusions, on the one hand, and the plans and exhibits, on the other, the findings and conclusions will govern. Appellants argue that this condition creates an unreasonable restriction on their title because of the inability to easily follow the findings, conclusions and plans and because they are vague. Before the Board, they argued that the approved plans should take precedence in case of conflict.

We have affirmed a similar order in a zoning case. *In re Duncan*, 155 Vt. 402, 410, 584 A.2d 1140, 1145 (1990). We see no reason to adopt a different standard for Act 250 review. The necessary result of detailed environmental review, as contemplated by Act 250, is that restrictions on land use will not be simple to state or even to ascertain. That concern is addressed in part by the requirement that permits, including their conditions, be recorded in the land records. See 10 V.S.A. § 6090(a). Persons coming upon this permit will know that they have to also look at the findings, conclusions and plans. The Board can review only what is presented to it so that its findings and conclusions are a necessary ingredient to determining what it has approved. We believe that this condition is reasonable under the circumstances.

*Affirmed.*