2012 VT 29

## In re Petition of CROSS POLLINATION for a 30 V.S.A. Section 248 Certificate of Public Good

[47 A.3d 1285]

No. 11-352

¶ 1. April 12, 2012. Appellant John Madden appeals the Public Service Board's order granting a certificate of public good for appellee Cross Pollination, Inc.'s planned construction of a solar energy farm in the Town of New Haven. Appellant claims that the Board erred in applying 30 V.S.A. § 248, which regulates

the construction of electric generation facilities, and should not have issued the certificate because the solar farm will have an "undue adverse effect" on the aesthetics of the natural landscape as defined by 30 V.S.A. § 248(b)(5). We affirm.

¶ 2. The facts and procedural history may be summarized as follows. Appellant is a New Haven resident who owns property near the planned construction site. Cross Pollination is a Vermont corporation based in Burlington. In July 2010, Cross Pollination petitioned for a certificate of public good to build and operate a 2.2 megawatt solar electric generation facility along Route 7 in New Haven (the Project). Appellant opposes the Project and was granted intervention in this matter.

¶ 3. On September 28, 2010, a site visit was held at the Project's proposed location, followed by a public hearing at the New Haven town hall. Around fifteen members of the public attended the meeting, several of whom questioned, among other things, the Project's economic benefit, its costs to ratepayers, its effect on property values, and its impact on the environment and the natural landscape. The Town of New Haven, however, along with the Addison County Regional Planning Commission, the Agency of Agriculture, Food and Markets, the Agency of Natural Resources, and the Department of Public Service, joined in support of the Project. Together, these parties filed a stipulation and an amended set of proposed findings of fact and order agreeing that the Board should issue the certificate of public good with conditions (the Stipulation).

¶ 4. After a technical hearing on the merits on February 17, 2011, the hearing officer issued a proposal for decision (PFD) recommending that the Board approve the petition. The PFD relied on the prefiled testimony of Paul Lekstutis, a principal of Cross Pollination, and Mark Kane, a land-use planner with the Burlington firm SE Group hired by Cross Pollination, along with various exhibits and the Stipulation. Among the exhibits received as evidence were the "Open View Solar Farm Visual Land Use Analysis Report" (the Report), prepared by SE Group, and pertinent provisions of the New Haven Town Plan and Zoning By-laws, and Addison County Regional Plan.

¶ 5. Drawing from this evidence, the hearing officer made detailed findings covering each of the statutory criteria for the issuance of a certificate of public good. The PFD's findings and discussion of the Project's potential effect on the aesthetics of the land, the subject of 30 V.S.A. § 248(b)(5), were especially thorough. Applying the standard named after this Court's decision in *In re Quechee Lakes Corp.*, 154 Vt. 543, 580 A.2d 957 (1990) (the *Quechee* test), the PFD acknowledged that the Project would have an adverse impact on the aesthetics of the land — given its placement of solar panels on forty acres of farmland — but concluded that this impact would not be undue. It reasoned that the Project does not violate clearly written standards found in the New Haven Town Plan or the Addison County Regional Plan. Moreover, it explained that Cross Pollination's plans include reasonable steps to limit the Project's aesthetic impact by minimizing visibility and, where possible, mimicking the natural look and use of the land. Finally, it concluded that the effort to blend renewable energy into a farming landscape is not "shocking or offensive to the average person." The hearing officer noted the opposition of appellant, who had participated in the hearing and later filed a brief, but explained that he "provide[d] no cogent argument or evidence of why the Project does not satisfy the *Quechee* test."

¶ 6. The Board adopted the PFD and issued the certificate of public good on July 8. In doing so, it accepted the hear-

ing officer's reasoning for why the Project will not have an undue adverse impact on the aesthetics of the landscape. Devoting much discussion to appellant's concerns, the Board further explained that, beyond his disagreement with the PFD's decision on this point, appellant made no specific allegations of error, and dismissed as unfounded his questioning of the hearing officer's qualifications. The Board denied appellant's motion for reconsideration, and this appeal followed.

¶ 7. Appellant's sole claim is that the Board erred in applying the *Quechee* test and should have concluded that, under 30 V.S.A. § 248(b)(5), the Project will have an "undue adverse effect" on the aesthetics of the land. As a result, he urges, no certificate of public good should have issued. Citing provisions from the New Haven Town Plan stating the Town's goal of preserving the agricultural character of the land and describing open land as a "scenic attraction," appellant argues that the Project violates a clear, written community standard. And, citing letters from various townspeople who oppose the Project as well as other sources describing the natural beauty of Vermont, he argues that the Project "offends the sensibilities of the average person."

¶ 8. The Board's consideration of a petition for a certificate of public good is a "legislative, policy-making process" and is thus accorded great deference. *In re Vt. Elec. Power Co.*, 2006 VT 69, ¶ 6, 179 Vt. 370, 895 A.2d 226 (quotation omitted). We will affirm the Board's findings unless they are clearly erroneous. *Id.* Moreover, because we "presume that decisions made within the Board's expertise are correct, valid and reasonable," we will uphold the Board's legal conclusions if "they are rationally derived from a correct interpretation of the law and supported by the findings." *In re Times & Seasons, LLC*, 2008 VT 7, ¶ 6, 183 Vt. 336, 950 A.2d 1189 (quotation omitted). We affirm the Board's findings in this case, and hold

that its decision was based on a correct reading of the law and is supported by its findings.

¶ 9. Before turning to the Board's decision, we begin by outlining the applicable law. Under 30 V.S.A. § 248, no company may construct an electric generation facility within the State of Vermont without first obtaining a certificate of public good from the Board. 30 V.S.A. § 248(a)(2)(A). Section 248(b) generally sets forth criteria that must be satisfied before the Board issues a certificate of public good. Section 248(b)(5) in particular requires in part that the Board find that a facility "will not have an undue adverse effect on [a]esthetics . . . with due consideration having been given to the criteria specified in" 10 V.S.A. § 6086(a)(8). Section 6086(a)(8) — which also applies in the context of Act 250 permit applications — in turn specifies that the Board must find that the project "[w]ill not have an undue adverse effect on the scenic or natural beauty of the area, aesthetics, historic sites or rare and irreplaceable natural areas."

¶ 10. This Court has approved the *Quechee* test as the standard for compliance under § 6086(a)(8). The first prong of this test asks whether the proposed project "will have an adverse impact on scenic and natural beauty." *In re UPC Vt. Wind, LLC*, 2009 VT 19, ¶ 24, 185 Vt. 296, 969 A.2d 144; see also *Quechee Lakes Corp.*, 154 Vt. at 555-57, 580 A.2d at 964-65 (reviewing Environmental Board's decision regarding aesthetic impact of proposed Act 250 permit amendment). If the reviewing authority so finds, the question becomes whether this adverse impact would be "undue." *In re UPC Vt. Wind*, 2009 VT 19, ¶ 24. Such an impact is not undue if three conditions are met. First, the project must not violate "a clear, written community standard intended to preserve the aesthetics or scenic, natural beauty of the area." *Id.* Second, it must not "offend[] the sensibilities of the aver-

age person." *Id.* Finally, the applicant for the certificate of public good must take "generally available mitigating steps that a reasonable person would take to improve the harmony of the proposed project with its surroundings." *Id.*[*]

¶ 11. The record supports the Board's general finding that the Project will not have an undue adverse effect on the aesthetics of the land. This finding rests mainly on the testimony of Mr. Kane, itself based on the Report, which evaluates the Project in accordance with the *Quechee* test. Mr. Kane, supported by the Report's "visual analysis," testified that "[w]hile visible from portions of Route 7, the Project is not a dominant element in the landscape, but rather, would be seen as a land use consistent with the agricultural uses that dominate the region." He also noted, as did the Report, that Cross Pollination took steps to limit the Project's visibility, such as using existing hedgerows and trees as screening, ensuring minimum setbacks of 300 feet, expanding on the property's agricultural use, and adopting "context-appropriate" design for structures. Finally, he testified that the Project was consistent with both the New Haven Town Plan and the Addison County Regional Plan, explaining that, given its limited aesthetic impact, the Project did not conflict with the former's provisions for land conservation and the protection of scenic views. In light of this, Mr. Kane concluded that the Project would not have an undue adverse aesthetic impact.

¶ 12. Appellant argues with, but does not dispel, this evidence supporting the Board's finding. Appellant's disagreement with the Board about whether the Project is inconsistent with the New Ha-

ven Town Plan, or offends the sensibilities of the average person, does not establish error. See *In re Wildlife Wonderland, Inc.*, 133 Vt. 507, 511, 346 A.2d 645, 648 (1975) ("Where a conflict in the evidence develops, its resolution falls within the Board's jurisdiction, for the Board is the proper trier of fact."). Rather, "our focus is upon the evidence supporting the Board's findings and the question whether that evidence is adequate." *Quechee Lakes Corp.*, 154 Vt. at 555, 580 A.2d at 964. Given its support in the record, we see no error in the Board's finding as to the § 248(b)(5) criterion.

¶ 13. The Board's decision also reflects its proper application of the *Quechee* test. The Board acknowledged the adverse aesthetic effect of placing a solar panel array in the middle of farmland. It then considered the weight of this effect under the standards expressed in the New Haven Town and Addison County Regional Plans, in light of the steps taken to mitigate the Project's visibility, and according to the sensibilities of the average person. In doing so, the Board correctly interpreted the applicable legal standard, and its decision, rooted in its detailed findings, was a rational application of that standard. Appellant's sincere belief that the Project will diminish the beauty of the farmland nestled along Route 7 in New Haven provides no basis to disturb the Board's decision. See *In re Denio*, 158 Vt. 230, 239, 608 A.2d 1166, 1171 (1992) ("Determining the degree of adverse aesthetic effect is a matter of weighing of the evidence, a role for the Board rather than for this Court."). Given this, and mindful of the deference accorded to the Board's policy expertise, we affirm the Board's decision.

*Affirmed.*

Motion for reargument denied May 10, 2012. Motions for reconsideration and disqualification denied June 4, 2012.

---

[*] Because appellant appeals the Board's decision only on the basis of its finding as to the Project's effect on the aesthetics of the land, we confine our review of the Board's decision to this issue alone.