NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2015 VT 135

No. 2015-067

| | |
|---|---|
| In re Petition of VTel Wireless Inc., for a Certificate of Public Good, Pursuant to 30 V.S.A. § 248a, for the Installation of Telecommunications Equipment in Bennington, Vermont (Susan Beal and David Pearson, Appellants) | Supreme Court<br><br>On Appeal from<br>Public Service Board<br><br>June Term, 2015 |

James Volz, Chair

Jon T. Anderson of Burak Anderson & Melloni, PLC, Burlington, for Appellants.

William J. Dodge and Elizabeth Kohler of Downs Rachlin Martin PLLC, Burlington, for Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **SKOGLUND, J.** Appellants Susan Beal and David Pearson appeal from a decision of the Public Service Board granting a certificate or public good (CPG) for the installation of a telecommunications facility by VTel Wireless, Inc. in the Town of Bennington. Appellants contend the Board erred in finding that they had failed to demonstrate: (1) a "substantial interest" to intervene in the proceeding; and (2) a "significant issue" to warrant a hearing. We affirm.

¶ 2. In late May 2014, VTel provided notice of its intent to seek a CPG for a planned telecommunication project, as required by statute. 30 V.S.A. § 248a(e). The notice was sent to several local and state agencies and all adjoining landowners, including appellants, and set forth

in considerable detail a description of the proposed telecommunication facility, its purpose, and its anticipated impacts. The prefiling notice explained that the project was to be located in a heavily wooded area on property owned by Southern Vermont College, just off of Mansion Drive in Bennington. The goal was to bring high-speed, wireless internet service to as many as 7,700 un-served or under-served homes and businesses in the area. The planned facility would consist of a ninety-foot metal communications pole with attached antennas, a storage container on a concrete pad adjacent to the tower, and underground power lines. An existing gravel road off of Mansion Drive would provide access to the site.

¶ 3. A series of zoning drawings, viewshed maps, and simulated photographs showing the planned tower from various locations were appended to the notice to demonstrate the project's anticipated aesthetic impacts. According to VTel, these showed that the project would be situated away from ridgelines in an existing clearing bounded by forest on all sides, that its visibility impact was expected to be minimal, and that it was not expected to diminish the scenic qualities of the area. An analysis and summary of the project's compliance with the zoning requirements and goals of the Bennington town and regional plans was also included, as well as documentation showing the project's compliance with radio-frequency emission guidelines promulgated by the Federal Communications Commission.

¶ 4. The notice also outlined the statutory review process, explaining that the Board would be required to evaluate the project to determine its consistency with town and regional plans, and that VTel accordingly would be seeking recommendations for approval of the project from the Town and the Bennington Regional Commission prior to submission of a formal CPG application. The notice further indicated that the project qualified as a telecommunication facility "of limited size and scope" under 30 V.S.A. § 248a(b)(3) and therefore was subject to expedited review under a limited number of criteria, including aesthetics. See 30 V.S.A. § 248a(c)(1) (providing that, "with respect to telecommunications facilities of limited size and

2

scope, the Board shall waive all criteria of this subdivision other than 10 V.S.A. §§ 6086(a)(1) (floodways) and 6086(a)(8) (aesthetics, scenic beauty, historic sites, rare and irreplaceable natural areas, endangered species, and necessary wildlife habitat)"); 30 V.S.A. § 248a(j)(1) (providing that "[t]he Board may . . . issue a certificate of public good . . . if the Board finds that such facilities will be of limited size and scope, and the application does not raise a significant issue with respect to the substantive criteria of this section"). Additionally, the notice explained that, once the application was filed, interested persons could submit comments and/or seek to formally intervene in the proceeding within twenty-one days, and that the Board would issue a final determination on the application within forty-five days "[u]nless [it] determines that [the] application raises a significant issue under statutory criteria."

¶ 5. About two months later, in late July 2014, VTel filed its formal CPG application with the Board. The application included prefiled testimony, numerous exhibits—including all of those submitted with the prefiling notice—and a "project narrative" outlining the nature and scope of the project and its compliance with the relevant statutory criteria for projects of limited size and scope under 30 V.S.A. § 248a(b)(3). With respect to aesthetics, the application applied the two-part Quechee test, named for this Court's decision in In re Quechee Lakes Corp., 154 Vt. 543, 580 A.2d 957 (1990). VTel maintained that the project would have no adverse effect as demonstrated by the evidence showing that it would be minimally visible from most vantage points or, alternatively, that any adverse effect would not be undue. It asserted, in this regard, that the Bennington town plan established a general policy in favor of improving wireless services and did not identify any inconsistent standards for the project site; that the tower would not offend the sensibilities of the average person—its height was consistent with the "limited size and scope" threshold established by statute in 30 V.S.A. § 248a(b)(3)(a)(i) and the "flush-mounted" antennae design was less obtrusive than most conventional communication towers; and that VTel had taken reasonable mitigating steps to harmonize the tower with its environs

3

through its design and placement in a forested area away from ridgelines, as demonstrated by the maps, photographs, and other exhibits submitted with the application.

¶ 6. Concurrent with the CPG application, VTel provided notice to adjoining landowners, explaining that a copy of the application was available for inspection at Town offices; that anyone wishing to submit comments, request a hearing, or move to intervene was required by statute to file a submission by August 12, 2014; and that any person requesting a hearing would be required to show that the application "raises a significant issue regarding one or more of the substantive criteria applicable to the proposed project."

¶ 7. Appellants, through counsel, filed a timely motion to intervene as of right, stating that the project was adjacent to an area of their property known as the Beal Development Site, a conservation subdivision on which they hoped to construct five houses. Appellants asserted that their efforts to preserve the balance of the property as farmland was financially dependent on the future construction; that the proposed telecommunications tower would be visible from the development site; and that potential buyers would be dissuaded if the project were approved. Appended to the motion were letters from the potential developer and buyers. Appellants also filed a request for a hearing, asserting that the project would have an adverse aesthetic impact on their property that could be avoided "simply by locating the tower at least 1,200 feet away from the area [appellants] propose[] to develop." Appended to the request were a number of letters from appellants' neighbors and tenants attesting to the tower's anticipated adverse aesthetic impact on appellants' property.

¶ 8. The Public Service Department subsequently wrote the Board expressing its view that the project qualified as a telecommunications facility "of limited size and scope" under the statute, and did "not raise a significant issue with respect to any substantive applicable § 248a(c) criteria that are under the Department's review," but reserved its final recommendation on

4

approval until the Board ruled on appellants' motion to intervene and request for a hearing.[1]

VTel responded to appellants' requests with a memorandum in opposition, asserting that the project's purported impacts on appellants' financial interests and private views were insufficient to grant intervention and that appellants had presented no evidence of a significant issue to contravene the materials submitted by VTel.[2] In their reply memorandum, appellants maintained that the statutory criteria were designed to protect "private as well as public views," and that their interests were sufficient to warrant intervention and a hearing.

¶ 9.     The Board issued a written ruling in early January 2015. The Board found that the project qualified as one "of limited size and scope" under the statute, 30 V.S.A. § 248a(j)(1);" that it would not violate any written community standards contained in applicable town and regional plans; and that it would "not have an undue adverse effect on aesthetics." With respect to appellants' requests, the Board found that they had not shown a "substantial interest" under Board rules that would entitle them to intervene in the proceeding,[3] nor had they shown that the project "raises a significant issue with respect to any of the relevant 248a criteria, including aesthetics" that would warrant granting their request for a hearing. Concluding that the project would promote the general good of the State, the Board issued a CPG for the project

---

[1] Despite concluding that the project raised no significant issue with respect to the relevant statutory criteria, the Department did "not oppose" appellants' request for a hearing.

[2] VTel also filed supplemental prefiled testimony describing its exploration of the alternative of "collocation," or joining onto an existing tower owned by CTI Tower Assets I, LLC, which ultimately proved to be unworkable due to the CTI tower's inability to support VTel's equipment. The supplemental testimony also outlined VTel's discussions with Southern Vermont College, in which the latter indicated that it was unwilling to move the tower to any other location on its property.

[3] Board Rule 2.209 authorizes intervention either "as of right" or by permission, but in either case an applicant must demonstrate "a substantial interest" which may be affected by the outcome.

conditioned on its construction, operation, and maintenance in accordance with the evidence and plans submitted by VTel. This appeal by appellants followed.

¶ 10. In reviewing the Board's issuance of a CPG we have "emphasize[d] the limited nature of our review." In re UPC Vermont Wind, LLC, 2009 VT 19, ¶ 2, 185 Vt. 296, 969 A.2d 144. "When the Board evaluates a petition for a CPG under 30 V.S.A. § 248, it is engaging in a legislative, policy-making process." Id. (quotation omitted).[4] In so doing, it "must exercise its discretion 'to weigh alternatives presented to it, utilizing its particular expertise and informed judgment.' " Id. (quotation omitted). Thus, we "give great deference to the Board's expertise and judgment, and accord a strong presumption of validity to the Board's orders." Id. (quotation omitted).

¶ 11. Appellants contend the Board erred in two respects, first in concluding that they lacked a substantial interest entitling them to intervene, and second in determining that they failed to raise a significant issue under any of the relevant § 248a criteria entitling them to a hearing on the merits. As explained below, we find no basis to disturb the Board's ruling on the second point, and therefore need not address the first.[5]

¶ 12. As outlined earlier, the record shows that appellants were afforded ample notice of the statutory requirement that they submit material sufficient to "raise a significant issue with respect to the substantive criteria" applicable to the project. 30 V.S.A. § 248a(j)(2)(A). VTel's prefiling notice in late May 2014 alerted appellants that, upon the filing of a CPG application, the Board would seek comments on the project and issue a final decision within forty-five days

---

[4] We discern no basis for according any less deference to Board decisions relating to the issuance of a CPG for telecommunication facilities under 30 V.S.A. § 248a than we have traditionally afforded Board decisions relating to the issuance of a CPG for power-generating facilities under 30 V.S.A. § 248.

[5] At oral argument, appellants' counsel acknowledged that, even if appellants prevailed on intervention, the outcome of the case would not change if the Court affirmed the Board's ruling that they failed to raise a significant issue.

unless it determined that the application raised a significant issue under the applicable statutory criteria. Two months later, in late July 2014, VTel's notice of filing informed adjoining landowners of the late August deadline for showing that the application "raises a significant issue regarding one of more of the substantive criteria applicable to the proposed project."

¶ 13. The record discloses, as well, that the Board gave due consideration to the project's aesthetic impacts under the Quechee standard. See 30 V.S.A. § 248a(c)(1) (conditioning issuance of CPG on "due consideration having been given to the relevant criteria in 10 V.S.A. §§ 1424a(d) and 6086(a)(1) through (8)"). Under this test, the Board first inquires whether the project "will have an adverse impact on scenic and natural beauty," and, if so, whether the impact will be "undue" in light of three criteria: first, it must not violate clear, written community standards designed to preserve the aesthetics of the area; second, it must not offend the sensibilities of the average person; and finally, the applicant must take generally available mitigating steps to harmonize the project with its surroundings. In re UPC Vt. Wind, LLC, 2008 VT 19, ¶ 24. In this regard, the Board here found that the project "involves a relatively short tower located in a heavily wooded area that will screen the lower portions of the facility from view"; that the tower would be "minimally visible from most vantage points," and would further "utilize flush mounted antennas to minimize visibility"; and that, by utilizing an existing access road, the project would avoid any additional clearing. In light of these findings, the Board determined that the project would "not be shocking or offensive to the average person," and would "not have an undue adverse effect on aesthetics." The record evidence before the Board, including VTel's prefiled testimony, viewshed maps, site maps, and photographic simulations, fully supported these findings.

¶ 14. Appellants maintain, nevertheless, that the Board failed to give their position due consideration by dismissing as irrelevant a project's aesthetic impact on private parties. Although the Board cited this Court's decision in In re New Cingular Wireless PCS, LLC for the

7

proposition that "proceedings pursuant to § 248a relate only to the issue of public good, not the interests of private landowners who are or may be involved," 2012 VT 46, ¶ 15, 192 Vt. 20, 54 A.3d 141, it was in the context of deciding whether appellants had demonstrated a sufficiently "substantial interest" for intervention as of right, an issue we do not here consider.[6]

¶ 15.    The Board went on to specifically acknowledge appellants' "expressed . . . desire that the [p]roject be located in an area that is not near their property," but found that they had "not shown that the [p]roject in its current location raises a significant issue."   Regardless of the legal relevance of a project's aesthetic impact on private parties under § 248a, therefore, it appears that the Board considered appellants' argument but found that it lacked sufficient weight to raise a "significant issue" requiring a hearing on the merits.   See The American Heritage College Dictionary 721, 1268 (3d ed. 1993) (defining "significant" as "[h]aving or likely to have a major effect; important," and "issue" as a point in "debate, or dispute").   This was a decision well within the scope of the Board's expertise and discretionary authority, and appellants have not shown on the record presented that its discretion was abused or exercised on clearly untenable grounds.   In re Petition of Cross Pollination, 2012 VT 29, ¶ 8, 191 Vt. 631, 47 A.3d 1285 (mem.) ("The Board's consideration of a petition or a certificate of public good is a legislative, policy-making process and is thus accorded great deference."); In re UPC Vermont Wind, LLC, 2009 VT 19, ¶ 2 (noting that Board "must exercise its discretion 'to weigh

---

[6]    In re New Cingular Wireless did not concern the issue of standing to intervene, but rather whether the CPG notice in that case comported with due process.  2012 VT 46, ¶ 10. Indeed, without purporting to resolve the standing issue here, we note that the Board in Cingular granted the motion to intervene by adjoining landowners who asserted, among other claims, that the planned telecommunications tower would "result in 'undue aesthetic effects' on the views they currently enjoy from their respective properties," reasoning that, "although [landowners] had failed to provide any evidence  . . . to support their contention . . . , they had articulated a sufficient interest in ensuring that those impacts do not come to pass to warrant permissive intervention pursuant to Board Rule 2.209(B)."  Id. ¶ 4.

alternatives presented to it, utilizing its particular expertise and informed judgment.' " (quotation omitted)).  We thus discern no basis to disturb the judgment.[7]

    Affirmed.

FOR THE COURT:

_____

Associate Justice

---

    [7]  Although appellants also list as a separate issue in their brief whether the Board's decision provides "a sufficient explanation and justification for its rulings," they did not adequately brief or argue the issue, and we therefore decline to address it.  See In re Musto Wastewater Sys., 2014 VT 103, ¶ 5 n.2, ___Vt. ___, 106 A.3d 929 (declining to address issues raised but not actually addressed or argued in "the content of the brief").