In re PUTNEY PAPER COMPANY, INC.

[714 A.2d 644]

No. 97-081

June 23, 1998. Appellant Nathaniel Hendricks appeals an order of the Waste Facility Panel (Panel) of the Vermont Environmental Board issuing an amended Solid Waste Certification permitting Putney Paper Company to operate an unlined landfill cell, and an Indirect Discharge Permit authorizing the indirect discharge of leachate into the Connecticut River from the cell. Hendricks contends that (1) the Panel's findings concerning the flow of groundwater are not supported by the evidence; (2) the Panel improperly applied the Water Quality Standards; (3) the Panel's findings are contrary to the Ground Water Protection Rule and Strategy; and (4) the Panel improperly relied on an expired variance. Appellee Putney Paper cross-appeals, arguing that Hendricks cannot establish

party status and therefore has no right to appeal the Panel's decision. We affirm.

The Agency of Natural Resources (ANR) issued a Solid Waste Certification (Certification) to Putney Paper on September 15, 1995, authorizing it to construct a new unlined paper sludge landfill cell. ANR separately issued Putney Paper an Indirect Discharge Permit (Permit) on January 10, 1996, authorizing the discharge of leachate from the new cell. Hendricks, who owns a parcel adjoining the landfill cell to the west, separately appealed the Certification and the Permit to the Panel. Putney Paper responded to each of Hendricks's appeals by challenging his party status. The Panel granted Hendricks party status to challenge both the Certification and the Permit and ordered the appeals consolidated. On November 8, 1996, the Panel issued Findings of Fact, Conclusions of Law, Order, an amended Certification, and an amended Permit authorizing Putney Paper to operate the new cell. Both parties filed motions to alter the Panel's decision, which were denied. This appeal followed.

We first consider Putney Paper's argument that Hendricks does not have party status to appeal either the Permit or the Certification. The Panel originally granted party status to Hendricks under 10 V.S.A. § 6102(b) and (c), permitting him to challenge the Certification, and subsequently the Permit. Section 6102(b) provides that adjoining property owners are entitled to party status "to the extent the waste facility would have a direct effect on [their] property." Putney Paper asserts that Hendricks was not entitled to party status under § 6102(b) because the Panel's ultimate findings demonstrate that the new cell will have no impact on Hendricks's property.

With respect to the Certification, the Panel found that volatile organic compounds, semi-volatile organic compounds, and polychlorinated biphenyls (PCBs), along with "dioxin, iron, and manganese will leach from the sludge." The Panel recognized the harmful nature of some of the leachate, even though the amounts would not be above detectable limits. The Panel granted Hendricks party status, concluding that "[g]iven the proximity of Appellant's drinking wells, the Panel concludes that the Appellant has demonstrated that the Project will have some effect on his property." Relying on similar findings, the Panel also granted Hendricks party status to appeal the Permit.

After the Panel rendered its decision on the merits, Putney Paper moved to alter the Panel's finding that Hendricks was entitled to party status. In support of its motion, Putney Paper argued that, having concluded that the landfill will have no effect on Hendricks's property, the Panel should revise its prior determinations and rule that Hendricks is not entitled to party status under § 6102(b). The Panel affirmed its prior determinations, and Putney Paper appeals.

We review the Panel's decisions regarding party status for abuse of discretion. See *In re Chittenden Recycling Servs.*, 162 Vt. 84, 88, 643 A.2d 1204, 1205-06 (1994). We will uphold the Panel's decision absent a showing that the Panel "'withheld its discretion entirely or that it was exercised for clearly untenable reasons or to a clearly untenable extent.'" *Id.* (quoting *Vermont Nat'l Bank v. Clark*, 156 Vt. 143, 145, 588 A.2d 621, 622 (1991)). The Panel concluded that enough uncertainty existed regarding the effect of the leachate on Hendricks's property that it imposed an additional condition in the Certification requiring "Putney Paper to install observation wells to determine the extent of the westerly flow component to further protect the public's health." In light of this uncertainty, we conclude the Panel did not abuse its discretion by affirming its finding that Hendricks is entitled to party status. Having determined that Hendricks is entitled to party

status pursuant to 10 V.S.A. § 6102(b), we decline to consider whether he was also entitled to party status under § 6102(c), and we turn to his arguments on appeal.

Hendricks first argues the Panel erroneously determined that the groundwater flows in a southerly direction with a "minimal, intermittent westerly flow component" before discharging into the Connecticut River. He contends this finding is not supported by the evidence and must be reversed.

We review the Panel's findings of fact pursuant to 10 V.S.A. § 6089,[1] which provides that the Panel's findings shall be conclusive "if supported by substantial evidence on the record as a whole." *Id.* § 6089(c). Substantial evidence "is evidence properly before the Board that is relevant and which a reasonable person might accept as adequate to support a conclusion." *In re Denio,* 158 Vt. 230, 236, 608 A.2d 1166, 1170 (1992).

A review of the record indicates that there was ample evidence before the Panel to support its finding. A professional hydrogeologist testified that the groundwater flows in "a generally southerly direction towards the Connecticut River in a slight westerly component on the westerly side of the landfill." A professional engineer also testified that "the regional flow of groundwater is clearly towards the river and slightly in a westerly direction at the west end of the site." An environmental engineer for the ANR also gave substantially similar testimony. We conclude that the Panel's finding is supported by substantial evidence.

Hendricks next argues that the Panel improperly applied § 1-04A.2 of the Water Quality Standards (WQS), 6 Code of Vermont Rules 12004052-11 (1997), and that its findings and conclusions lack support in the record. WQS § 1-04A.2 requires a finding that "[t]here is no alternative method of, or location for, waste disposal that would have a lesser impact on water quality including the quality of groundwater, or if there is such an alternative method or location, it would be clearly unreasonable to require its use."

The Panel found that Putney Paper owns no other location for the disposal of its paper sludge. Testimony established the only alternative methods would be to ship it off-site to a lined landfill at an approximate cost of $576,000 per year, or to require Putney Paper to line the New Cell at a cost of approximately $3,000,000. Other evidence showed that at least eleven years of monitoring has demonstrated that the discharge from an existing cell has not adversely affected the groundwater. Although Hendricks points to other evidence in the record that supports his argument that an alternative site would be preferable, matters regarding the weight and sufficiency of the evidence are for the Panel and not this Court. See *In re Quechee Lakes Corp.,* 154 Vt. 543, 554-55, 580 A.2d 957, 963-64 (1990). Having satisfied itself that the New Cell otherwise complies with the WQS, the Panel concluded that there is no reasonable alternative method or location available. The Panel's findings are supported by the evidence, and its conclusions supported by the findings. There is no error.

Hendricks next argues that the Panel incorrectly interpreted the requirements of the Ground Water Protection Rule and Strategy (GWPRS).[2] The GWPRS, administered by the ANR, requires a point-

---

[1] 10 V.S.A. § 6107 provides two separate procedures for appealing a decision of the waste facility panel, depending on the source of the appellant's party status. Having determined that Hendricks is entitled to party status pursuant to § 6102(b), we review the Panel's decision pursuant to 10 V.S.A. § 6089. See 10 V.S.A. § 6107(1).

[2] The Ground Water Protection Rule and Strategy has since been amended and

of-standards application where an activity may affect groundwater. GWPRS § 12-707(1). A point-of-standards application is defined as "the specific location, depth, or distance from an activity at which the concentration of a substance in ground water is measured for purposes of determining whether a preventive action limit or an enforcement standard has been exceeded." GWPRS § 12-201(13). GWPRS § 12-707(3)(c) provides that there shall be a point-of-standards application at "any point at or beyond the boundary of the property on which the activity is located."

During the hearings an engineer from ANR testified with respect to GWPRS § 12-707(3)(c) that, "[g]iven the direction of the groundwater flow for this project, the boundary of the project would be the bank of the Connecticut River . . . . Because groundwater becomes surface water at the boundary, there is no logical reason for determining whether or not the enforcement standards in the GWPRS are met at this point." Based on this and other testimony in the record, the Panel found that the groundwater under the landfill site flows toward the Connecticut River, without flowing through any adjoining properties, including Hendricks's property. Consequently, the Panel concluded that the landfill cell would not affect the appellant's groundwater and therefore that a point-of-standards application is not required under GWPRS § 12-707(3)(c). We hold that the Panel's decision is supported by the evidence, and we therefore defer to its determination. See *Denio*, 158 Vt. at 239, 608 A.2d at 1171 (we presume decisions made within the expertise of an administrative agency are correct, and we normally defer to an agency's determinations).

_____
appears at 7 Code of Vermont Rules 12037001 (Jan. 1998). All references in the text are to the 1988 version which governs the present case.

Finally, Hendricks argues that in reaching its decision, the Panel improperly relied on a solid waste variance. In a separate proceeding the Vermont Solid Waste and Air Quality Variance Board (Board) granted Putney Paper a variance from the Solid Waste Management rules authorizing them to maintain, construct, and operate the existing and proposed cells of its solid waste landfills. Hendricks argues that the Board's decision impermissibly provided that the variance would last for the life of the landfill, rather than for a single year. We need not address this issue because Hendricks did not preserve it for appeal.

Hendricks appealed the variance to this Court, the Waste Facility Panel, the Environmental Board, the Water Resources Board, the Environmental Law Division, and the Windham Superior Court. The Windham Superior Court, the only forum with jurisdiction to entertain the appeal, dismissed it for failure to prosecute pursuant to V.R.C.P. 41(b)(3), because Hendricks had failed to comply with three separate scheduling orders. The dismissal order operated as an adjudication upon the merits, and Hendricks never appealed it. Furthermore, Hendricks's appeal to the superior court did not challenge the duration of the variance. This argument has never been raised below, and we shall not entertain it here.

*Affirmed.*

Motion for reargument denied September 9, 1998.