STATE OF VERMONT

ENVIRONMENTAL COURT

|                          |   |                          |
|--------------------------|---|--------------------------|
|                          | } |                          |
| In re: Free Heel, Inc.,  | } | Docket No. 217-9-06 Vtec |
| d/b/a Base Camp Outfitters | } |                        |
|                          | } |                          |

Decision and Order

Appellant-Applicant Free Heel, Inc., d/b/a Base Camp Outfitters, appealed from a decision of the District 1 Environmental Commission denying Act 250 Permit Amendment No. 1R0928-1 in part, as it related to an application to affix decorative banners to nine permitted light poles at Appellant-Applicant's property. Appellant is represented by James P.W. Goss, Esq., who has moved for a decision on the merits of the appeal by summary judgment,[1] as no other parties have entered an appearance in opposition to the application in this de novo appeal.

The following facts are undisputed, as derived from the uncontested facts, documents, site plans and photographs provided by Appellant, and put into context by Judge Wright's general familiarity with and past informal views of the area, as agreed by Appellant in lieu of a formal site visit.

Appellant Free Heel, Inc., d/b/a Base Camp Outfitters, is a Vermont corporation whose principals are Michael and Diane Miller. Appellant owns a total of 48 acres of land

---

[1] Although no other party has appeared in this proceeding and no party has filed an objection to the motion, it is not before the Court in the nature of a default judgment. Rather, the Court must independently examine the material facts, and may only grant the motion if Appellants are entitled to judgment under the applicable substantive law, as the Court is obligated to apply the substantive standards that were applicable before the tribunal appealed from. 10 V.S.A. §8504(h); V.R.E.C.P. 5(g); and see In re: Outdoors in Motion, Inc., Act 250 Amendment, Docket No. 208-9-06 Vtec (Vt. Envtl. Ct., Dec. 26, 2006) (Durkin, J.) (unpublished entry order).

located northerly of Route 4 in the Town of Killington. Appellant owns and operates the Mountain Meadows Cross Country Ski Touring Center, the second oldest such center in the country, on the property. In 2004, Appellant obtained local zoning approval and Act 250 Permit No. 1R0928 to construct a 3,960-square-foot-footprint specialty outdoor sporting goods store (the Retail Building) and related infrastructure on a portion of the property with access by a short driveway to the northerly side of U. S. Route 4, across Route 4 from the intersection of Route 4 with the Killington Access Road, and just east of the intersection of Route 4 with Vermont Route 100 North.

The local approval and Act 250 approval contemplated the construction of the Retail Building project in two phases. The infrastructure related to the construction of the Retail Building approved in the permit included construction of a parking lot and nine free-standing light poles within the parking lot to provide illumination in that area, as well as a monument-style sign in the parking lot near the driveway from Route 4. The light poles line the southerly edge of the property nearest to Route 4. The first phase was built, and the retail store (Base Camp Outfitters) opened for business in 2005. The westerly-most six of the nine approved light poles have been installed.

Two commercial buildings are located close to Route 4 immediately to the west of Appellant's property, between it and the intersection of Route 100 North with Route 4. The Retail Building is set back farther from Route 4 than are the two commercial buildings immediately to its west, as it is separated from Route 4 by an unrelated, flat, undeveloped piece of property.

In 2006, Appellant applied for an amendment of its Act 250 and local permits to construct a 720-square-foot warming hut adjacent to and just west of the retail store building. The Mountain Meadows Ski Touring Center (Mountain Meadows) encompasses approximately 26 miles of cross-country ski trails located both on and off the property, and specifically in the vicinity of the retail store. The warming hut is intended to serve as the new focal point of Appellant's cross-country ski business and as the new primary staging

2

area for the cross-country ski touring operations at Mountain Meadows.

In its application for the warming hut, Appellant sought permission to attach a two-foot-by-five-foot decorative banner to each of the nine previously-approved light poles in the parking lot. The banners are proposed to be attached so that the lower edge of each banner is approximately ten feet above the pavement of the parking lot, that is, so that the banners extend with the bottom edges of the banners located ten feet above the ground to the top edge of the banners at fifteen feet above the ground. No new lighting is associated with the proposed banners; they would be lit by the lighting fixtures to which they are attached and do not involve any space or flood lighting. Appellant proposes that the banners will not involve any "garish colors" or "ugly designs."

Local site plan approval and zoning approval for the warming hut were granted in August and September of 2006, were not appealed, and became final. No local approval is required for the proposed banners, as reflected in a letter to the District Commission from the Killington Town Planner/Zoning Administrator.

Although Appellant requested minor application treatment of its Act 250 Amendment Application, which would have allowed its consideration without a hearing pursuant to Natural Resources Board Rule 51, the District 1 Environmental Commission scheduled a hearing and site visit on its own motion. No other parties appeared or were heard at the hearing and neither the Town nor any neighboring property owners or opponents submitted any comments or evidence opposing the proposed amendment.

On September 6, 2006, the District 1 Environmental Commission granted an Act 250 Permit Amendment for the warming hut, but denied approval of the nine decorative banners. The Commission denied approval of the banners exclusively on the grounds that the proposed decorative banners would have "an undue adverse effect on the scenic or natural beauty of the area, aesthetics, historic sites, or rare and irreplaceable natural areas," and would therefore not be in compliance with Criterion 8 of Act 250, 10 V.S.A. §6086(a)(8). Conformity of the proposed banners with Criterion 8 of Act 250, 10 V.S.A. §6086(a)(8), is

3

the sole issue in this appeal. 10 V.S.A. §8504(h) (Environmental Court to address "those issues which have been appealed"); V.R.E.C.P. 5(f).

The Retail Building, parking lot, light poles and proposed banners are located in the Commercial zoning district of the Town of Killington, which extends along both sides of Route 4 in the area of the Killington Access Road and Route 100 North intersection, and is located across Route 4 from the Business zoning district, which extends southerly up the Killington Access Road toward the Killington Ski Area. The area of Route 4 westerly of and including the area of the Retail Building is overwhelmingly characterized by roadside commercial development oriented to vacation, skier and other tourist traffic, as is the Killington Access Road. Land uses on Route 4 westerly of and in the vicinity of the Retail Building include gas stations, convenience stores, real estate offices, ski shops, related retail stores and ski rental facilities. Land uses extending up the Killington Access Road from Route 4 in the vicinity of the Retail Building include bars, night clubs, restaurants, hotels, professional offices, gas stations, liquor and convenience stores and other uses oriented to skier and other tourist traffic. All of the commercial land uses in the area have extensive signage, including flags, pennants, on-building signs and free-standing signs.

By contrast, immediately to the east of the Retail Store along the northerly side of Route 4, within the viewshed of the scenic view of the distant mountainside to the north, over the area of Kent Pond, only the Mountain Meadows location, an organic farm, and a condominium development are located on the north side of the road. Large stretches of undeveloped land between those uses allow a scenic view of the mountainside to the north, seen over the meadowland and Kent Pond, to be seen from Route 4. These scenic views are visible when viewed from Route 4 over the easterly portion of the Retail Building's parking lot, before the distant view is affected by the mid- and foreground view of the Retail Building itself and the other commercial buildings to its west. The six more-westerly light poles and their proposed banners have as a backdrop the middle distance to foreground views of the Retail Building, the warming hut, or the neighboring buildings

4

and trees to the west, or the roadway of Route 4, whether they are viewed from Route 4 eastbound, Route 4 westbound, or from across Route 4 approaching the intersection from the Killington Access Road. The three most-easterly proposed banners have as a backdrop the scenic view of the undeveloped mountainside, seen from Route 4 across the otherwise undeveloped area around Kent Pond.

Decorative banners mounted on light poles are commonly associated with commercial land uses in Rutland County, particularly in the vicinity of the Retail Building. The Town of Killington itself employs decorative banners attached to light fixtures along the Killington Access Road in the vicinity of the Retail Building. Decorative banners are also attached to light fixtures along the main streets in the City of Rutland, the Town of Brandon and elsewhere in Rutland County.

Analysis of a project's compliance with the aesthetics component of Criterion 8 is guided by the methodology established in the Quechee Lakes decisions of the Vermont Supreme Court and the former Environmental Board. In re Quechee Lakes Corporation, 154 Vt. 543 (1990); In re Quechee Lakes Corporation, Docket No. 3W0411-A-EB (Vt. Envtl. Bd., Nov. 4, 1985). The District Commission, and hence this Court in this de novo appeal, must first determine whether the aesthetic effect of the proposed project is "adverse," that is, whether it is or is not in harmony with its surroundings. If it is determined to be adverse, the second step in the analysis is to determine whether the anticipated adverse aesthetic effect of the project is "undue."

The proposed banners do not involve any garish colors, ugly designs, space or flood lighting, or other elements which would be deemed aesthetically shocking in and of themselves. Neither the Killington Zoning Regulations nor the Killington Town Plan in effect when the amendment application was filed contain any clear written community standard with respect to aesthetics that would prohibit or limit the design or use of the decorative banners in and of themselves.

However, the Town Plan does contain a clear written community standard with

5

respect to scenic views, in Section IV(A)(2)(b) at page 31:

> Scenic views with higher visual appeal exist at numerous points throughout the Town. The visual impact of the Town of Killington is primarily enjoyed from its roads, highways, and recreational trails, therefore, the visual analysis of scenic views was concentrated along these routes. Important panoramic views are from the southern end of Sherburne Valley to Wolf Hill, which encloses the northern end of the valley, Route 4 overlooking Kent Pond and distant mountains, and along sections of the Appalachian and Long Trails where cleared ski trails provide for panoramic views.

> There are also middle and close distance views of scenic landscape features which provide a contrast to the distant views. These include views of a wetland marsh, open fields, mountain peaks, surface water and other features of the Town's landscape pattern.

The planning recommendation associated with this section of the Town Plan is that "[i]mportant scenic views should be protected from development which would substantially diminish their scenic value."

As to the proposed banners on the six more-westerly light poles, the view of those proposed banners against the background will not adversely affect scenic views from Route 4 or from the foot of the Killington Access Road of the scenic landscape to the north, because the view of those banners will primarily be seen against the background of the Retail Building and warming hut, or against the background of the neighboring buildings and foreground trees on the properties to the west, or against the background of the Route 4 itself.

On the other hand, as to the proposed banners on the three most-easterly light poles, while the view of those proposed banners against the background will not adversely affect scenic views from the foot of the Killington Access Road, it will have an undue adverse effect on scenic views of the scenic landscape to the north from Route 4 easterly of the Retail Building. In that area, the three most-easterly proposed banners will appear prominently in the middle to foreground distance and will appear obtrusive against the more distant scenic view of the undeveloped mountainside, seen across the otherwise

6

undeveloped area around Kent Pond, contrary to the community standard expressed in the Town Plan. Accordingly, banners cannot be approved as proposed[2] for the three most-easterly light poles.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant's Motion for Summary Judgment is GRANTED in part, as to the six more-westerly proposed banners, and is DENIED as to the three most-easterly proposed banners, concluding this appeal.

The District Commission is directed to complete the ministerial act of issuing the amended Act 250 permit No. 1R0928-1 incorporating the amendment as decided by this decision and order. V.R.E.C.P. 5(j). Such amendment approves the attachment of a 2-foot-by-5-foot decorative banner to each of the six more-westerly approved light poles in the approved parking lot, subject to conditions that the banners shall be designed with primary colors and outdoor-related motifs or simple informational one- or two-word messages (as represented in Paragraph 21 of the Affidavit of Michael Miller and Exhibits 6(b) through 6(f) filed in this appeal); that they not utilize any lighting other than the light poles on which they are mounted; and that they be mounted so that the bottom edge of each is approximately ten feet above the ground surface.

Done at Berlin, Vermont, this 21st day of March, 2007.

_____
Merideth Wright
Environmental Judge

_____

 [2] This ruling is limited to the proposed size, height and location of the banners as proposed.