STATE OF VERMONT
ENVIRONMENTAL COURT

|                                              |   |                         |
|----------------------------------------------|---|-------------------------|
| **Land Use Panel of the**                    | } |                         |
| **Vermont Natural Resources Board,**         | } |                         |
| Petitioner,                                   | } |                         |
|                                              | } |                         |
| **v.**                                       | } | **Docket No. 49-4-13 Vtec** |
|                                              | } |                         |
| **Donald Dorr, Dorr Oil Co. and MGC, Inc.,** | } |                         |
| Respondents.                                  | } |                         |
|                                              | } |                         |

## Decision Following Respondent's Request for Hearing

This enforcement action concerns activities on two parcels of land in Manchester, Vermont; the action was initiated by the Land Use Panel of the Vermont Natural Resources Board ("the NRB"), which applied for an Emergency Administrative Order on April 23, 2013 ("the April 2013 EAO"), pursuant to 10 V.S.A. § 8009.

The Court immediately conducted an emergency hearing on the April 2013 EAO and, in an Order issued on April 24, 2013, concluded that the NRB had fulfilled the necessary requirements of 10 V.S.A. § 8009(b) for the 2013 EAO order to issue. Notice of that emergency hearing was provided to Respondents Donald Dorr, Dorr Oil Co., and MGC. Inc. ("the Respondents"), through the attorney who represents all three Respondents in this enforcement matter, W. Michael Nawrath, Esq.[1]  Pursuant to 10 V.S.A. § 8009(d), the Court advised Respondents of their right to request a full evidentiary hearing on the emergency order. Respondents, through their attorney, filed a timely request for hearing. The Court conducted the requested evidentiary hearing on May 2, 2013.

At the close of the taking of evidence at the May 2, 2013 hearing, the Court took a brief recess and then returned to the hearing to issue certain Findings of Fact and Conclusions of Law on the record of the hearing. The parties requested additional time to submit post-trial memoranda and supplemental documents. The Court granted the parties' joint request and authorized the parties to make their respective filings by May 8, 2013.

---

[1]  The NRB is represented in this proceeding by Melanie Kehne, Esq.

Both Respondents and the NRB submitted memoranda on May 8, 2013. The NRB included three supplemental exhibits with their May 8th filing that consisted of two documents referenced during the May 8th hearing but not introduced by either party. The Court accepts these supplemental exhibits into the evidentiary record of these proceedings:

(1) NRB Exhibit 4, which is a photocopy of Act 250 Land Use Permit #8B0018-2, issued by the District 8 Environmental Commission ("District Commission") to Richard Booth on September 7, 1990;

(2) NRB Exhibit 5, which is a photocopy of Act 250 Land Use Permit #8B0018-3, issued by the District Commission to Richard Booth on September 25, 1992; and

(3) NRB Exhibit 6, which is a photocopy of Act 250 Land Use Permit #8B0018-4, issued by the District Commission to Donald Dorr on October 11, 1994.

Respondent Donald Dorr also presented evidence with his attorney's May 8, 2013 filings of his payment of the $1,250.00 fine, plus accrued interest, required by the 2008 Administrative Order referenced below.

Having received these legal memoranda and supplemental exhibits and evidence, the Court considers the record for this enforcement matter complete as of May 8, 2013.

We note for purposes of satisfying 10 V.S.A. § 8012(c)(2) that the following statutes and rules are applicable to this proceeding, in addition to the 2013 and 2008 Administrative Orders noted above and below: 4 V.S.A. Chapter 27 (governing the Environmental Division of the Vermont Superior Court); 10 V.S.A. Chapter 151 (governing Land Use and Development, commonly referred to as Act 250); and 10 V.S.A. Chapter 201 (governing Environmental Enforcement).

Based upon the admitted evidence presented at the May 2, 2013 emergency hearing and supplemented by the parties' filings of May 8, 2013, the Court makes the following Findings of Fact and Conclusions of Law, together with the Judgment Order that accompanies this Decision:[2]

## Findings of Fact

1. The subject property consists of two large parcels of land off of Vermont Route 7 in the Town of Manchester, Vermont. A portion of one of the parcels may be accessed by a town or private road known as Westview Estate Road. See NRB Exhibit 2.

---

[2] The Court intends that these written Findings and Conclusions supplement the oral Findings and Conclusions that the Court made on the record of the May 2, 2013 hearing. However, to the extent that there is a conflict, the Court intends that its written Findings and Conclusions shall supersede its May 2, 2013 oral Findings and Conclusions.

2.     Since sometime prior to 1970, sand, rock and gravel have been extracted from a portion of one or both parcels. Respondent Donald Dorr testified that he purchased rock and gravel from this pit for several years prior to when he or one of his companies purchased the properties.

3.     Respondent Donald Dorr has lived in the Manchester area for nearly all of his life and has owned or operated various companies in his personal name or the name of a closely held company. Some of the companies Mr. Dorr has operated have involved excavation, construction and other businesses related to the development of land.

4.     A predecessor in title to Respondents, a Richard Booth, owned the two land parcels and operated the gravel pit on the subject properties.

5.     Sometime prior to 1990, Mr. Booth announced his desire to subdivide and develop the northern portion of the subject properties for purposes of residential development. We hereinafter refer to this portion of the subject property as "the Project Tract." The Project Tract contains about 89 acres of land.

6.     Mr. Booth applied for and ultimately received a state land use ("Act 250") permit that authorized a subdivision of the Project Tract into nineteen residential lots, with an internal road in the planned subdivision measuring approximately 3,500 feet. See NRB Exhibit 4, which consists of a photocopy of Land Use Permit #8B0018-2, issued by the District Commission on September 7, 1990.

7.     Prior to Mr. Booth's planned subdivision in 1990, some or all of the pre-existing gravel pit operated on the property south of and adjacent to the Project Tract ("the Adjacent Tract"). The specific dimensions of the gravel pit, past or present, were not made clear from the evidence received at the emergency hearing, although Respondents did not dispute that the gravel pit has expanded over the years in terms of the geographic area it encompasses.

8.     The Court cannot determine from the evidence presented whether the gravel pit has operated consistently over the years or whether the volume of sand, gravel, and rock extracted has remained consistent or expanded over the years.

9.     Sometime in 1992, Mr. Booth had not yet begun his planned subdivision or roadway development on the Project Tract. However, he apparently continued to envision that the subdivision and roadway would occur, since he applied for and received an Act 250 Permit amendment to extend the completion dates for his proposed residential development. See NRB Exhibit 5.

10.     Mr. Booth never began the actual subdivision of the Project Tract or the development of its internal roadway.  He or his companies subsequently sold the Project Tract.

11.     As the plans for the proposed residential subdivision remained idle, the gravel pit on or adjacent to the Project Tract continued to operate; the level of intensity of the gravel pit during this period was not specified during our emergency hearing.

12.     On June 7, 1994, Respondent Dorr Oil Co. purchased the Project Tract pursuant to a Warranty Deed from Real Estate Equities, Inc., a copy of which was admitted at the emergency hearing as Respondents' Exhibit B.  This Warranty Deed specifically references "Land Use Permit 8B0018 and any and all amendments thereto."  Id.

13.     Apparently shortly after the purchase of the Project Tract by Dorr Oil Co., Donald Dorr, in his individual name, sought a further extension of the construction completion date from the District Commission.  The District Coordinator thereafter issued Land Use Permit #8B0018-4 to Donald Dorr, in his individual name, extending the construction completion date for "the common roadway and firepond" to October 15, 1995.  See NRB Exhibit 6 at 1.

14.     Land Use Permit #8B0018-2 includes a provision that

> By acceptance of the conditions of this permit without appeal, the permittee[] confirms for himself and all assigns and successors in interest that the conditions of this permit shall run with the land and the land uses herein permitted, and will be binding upon and enforceable against the permittee[] and all assigns and successors in interest.
>
> NRB Exhibit 4 at 7.

15.     Respondent Donald Dorr is and has been the president, registered agent and a shareholder of Dorr Oil Co.

16.     At some unspecified time in or near to 1994, Respondent MGC, Inc. purchased the Adjacent Tract.

17.     At the time of MGC. Inc.'s purchase, most or all of the gravel pit operations were occurring on the Adjacent Tract.

18.     Respondent Donald Dorr is and has been the president, registered agent and a shareholder of MGC, Inc.

19.     Some or all of Respondents continued to operate the gravel pit after Respondents Dorr Oil Co. and MGC, Inc. purchased the Project Tract and Adjacent Tract.

20.     Respondent Dorr thereafter decided that he and his companies did not wish to begin or complete the residential subdivision proposed by Mr. Booth.

21. Land Use Permit #8B0018-2 included a provision that "[t]his permit shall expire on October 1, 2020 unless extended by the District Environmental Commission." See NRB Exhibit 4 at p. 8 (emphasis added).

22. Mr. Dorr was aware that Land Use Permit #8B0018-2, as amended by the -3 Permit, contained a limitation that "[a]ll construction and site work associated with this project shall be completed . . . by October 15, 1994, unless a [further] extension of this date is approved in writing by the Commission." NRB Exhibit 5 at 1.

23. Mr. Dorr and others believed that this construction completion deadline was the equivalent of a permit expiration date. No documentary evidence was offered to substantiate this belief; we conclude that it is a mistaken belief.

24. Mr. Dorr asserts that when a permitted development is not constructed by the construction completion deadline specified in its Act 250 permit, that permit expires by operation of law.

25. We do not find Mr. Dorr's assertion credible. In fact, in 2006 Mr. Dorr must have concluded that the subdivision permit had not yet expired or was not automatic because he and his then attorney filed a request with the District Commission to have Land Use Permit #8B0018-2 and -3 deemed abandoned.

26. In connection with this 2006 deemed abandoned request, Mr. Dorr, his attorney, or both represented to the District Commission that "Donald Dorr, [individually, was then] the current owner of the 89 acre parcel subject to the -2 [permit] amendment . . .." See Respondents' Exhibit G. The District Commission and its administrative staff relied upon this representation concerning ownership of the Project Tract.

27. The District Commission sent out notice of its intent to approve Mr. Dorr's abandonment request. Id.

28. Mr. and Mrs. Moriarty own a residential property along Westview Estate Road that adjoins the eastern boundary of the Project Tract. The Moriartys objected to the District Commission's intent to deem Land Use Permit #8B0018-2 as abandoned because they believed that Mr. Dorr had expanded the gravel pit on the Project Tract and that this expanded gravel pit use was a continuing violation of the subdivision permit. The Moriartys asserted that Land Use Permit #8B0018-2 only authorized the Project Tract to be used for a residential subdivision and

that the continued and expanded use of the gravel pit on the Project Tract constituted a "material change" from the permitted use for the Project Tract. See Respondents' Exhibit J.

29. The District Commission then tabled Mr. Dorr's request that the Commission deem Permit #8B0018-2 abandoned "pending a jurisdictional opinion from the District Coordinator on the above material change questions." Id.

30. The District Commission directed the District 8 Environmental Commission Coordinator ("District Coordinator") to investigate and issue a jurisdictional opinion that considered the assertions made by the Moriartys. Id. On January 12, 2007, the District Coordinator issued Jurisdictional Opinion #8-247 ("the 2007 JO") and sent copies of the 2007 JO to Mr. Dorr, through his attorney. The 2007 JO was addressed to Mr. and Mrs. Moriarty, as the parties who prompted the investigation. A copy of the 2007 JO was admitted as NRB Exhibit 3.

31. Prior to issuing the 2007 JO and in the course of investigating the Moriartys' claims, the District Coordinator requested information and answers to several questions from Mr. Dorr and his then new attorney, Mr. Nawrath. Id. at 2–3. Both Mr. Dorr and Attorney Nawrath reaffirmed for the District Coordinator that Mr. Dorr was the then owner of the Project Tract and had been a "user" of the gravel pit. Id.

32. As part of his investigation, the District Coordinator in mid-July, 2006, visited the gravel pit, with Mr. Dorr and Attorney Nawrath. Id. at 3. The coordinator "observed that active gravel extraction was occurring on the portion of the parcel permitted for the subdivision . . .." Id.

33. After providing a draft jurisdictional opinion to the parties, the District Coordinator issued the 2007 JO, concluding that "[gravel e]xtraction activity has expanded onto the parcel under jurisdiction of L.U.P. #8B0018-2 [and that t]his is a material change to the permit." Id. at 5. As a consequence of this material change in the permitted use, the District Coordinator concluded that gravel extraction constituted a violation of the Permit and could only continue on the Project Tract if a permit amendment was applied for and received.

34. None of the Respondents appealed the 2007 JO. None of the Respondents applied for an amendment to Land Use Permit #8B0018-2.

35. One or more of Respondents continued to operate and expand their gravel extraction operations on the Project Tract. Those gravel extraction operations and expansions have continued through May 2, 2013.

36. Respondents' operation and expansion of the gravel extraction operations have caused the pit perimeters to expand and move closer to the Moriartys' residential property. The noise and dust from the gravel extraction operations have travelled in greater and more significant volumes onto neighboring properties, including the Moriartys' property, such that the Moriartys are unable to use their dear deck or rear yard without great disturbance.

37. Recently, the gravel extraction operations have occurred for eight or more hours each day, often six and sometimes even seven days a week.

38. As a consequence of the 2007 JO, the District Commission did not renew its consideration of Mr. Dorr's 2006 request that it deem Permit #8B0018-2 as abandoned. The implicit understanding was that Mr. Dorr did not intend to subdivide the property, but that he would be filing a permit amendment application concerning his planned continued operation of the gravel pit. His request that the subdivision permit be deemed abandoned remains tabled to this day.

39. When Respondent Dorr did not submit a permit amendment application, the then NRB Chair issued an administrative order to Donald Dorr, as the self-identified owner of the Project Tract. A copy of this administrative order, issued on October 8, 2008, was admitted as NRB Exhibit 1 and is hereinafter referred to as "the 2008 AO."

40. By the 2008 AO, the NRB Chair gave notice that since Mr. Dorr had chosen not to appeal the 2007 JO, it had become final. Id. at 2. The NRB Chair announced his conclusion in the 2008 AO that Mr. Dorr, as the self-identified owner of the Project Tract and operator of the gravel pit, had "violated Condition No. 10 to the permitted project without written approval" and that these actions constituted a violation of Land use Permit #8B0018-2. Id.

41. The terms of the 2008 AO directed Respondent Dorr to:

   a. pay a $1,250.00 fine to the NRB within 30 days;

   b. "cease and desist all operation of the gravel pit on the project tract until all necessary permits from Act 250 and the Department of Environmental Conservation (DEC) are obtained"; and

   c. file a "complete Act 250 Land Use Permit Amendment application . . . [by] October 31, 2008."

   NRB Exhibit 1 at 2–3.

42. As of May 2, 2013, Respondent Dorr had not paid the fine or filed for an amendment to Permit #8B0018-2. Since Mr. Dorr received the 2008 AO, he or one or more of the companies

he owns, controls, and of which he is an officer and the registered agent has continued to operate and expand the geographical dimensions of the gravel pit on the subject properties

43. Respondent Dorr did not contest or appeal the 2008 AO. This Court then then approved the 2008 AO and incorporated it in to a Judicial Order as of November 6, 2008. NRB Exhibit 1 at 5.

44. Contrary to his and his attorney's representations to the District Coordinator, no evidence was presented at our evidentiary hearing that Donald Dorr has ever held title in his personal name to either the Project Tract or the Adjacent Tract.

45. The Project Tract continues to be owned by respondent Dorr Oil, Inc. and the Adjacent Tract continues to be owned by MCG, Inc. Mr. Dorr continues to be the president, registered agent, and a shareholder of both of these companies. Mr. Dorr also appears to be the sole individual in control of these companies, including their day-to-day operations and the management of their respective land holdings.

46. The NRB Chair and his staff took no actions to confirm Mr. Dorr's ownership representations. The NRB could have confirmed what entity was the lawful title holder of either the Project Tract or the Adjacent Tract by an examination of the Town of Manchester Land records.

47. The NRB offered no explanation for why it choose to wait five years to commence this enforcement action against one or more of the Respondents.

48. Most recently, one or more of Respondents have caused activities at the gravel pit to increase and the active pit area to move closer to the Moriartys' residential property. This increased activity at the gravel pit and the adverse impact upon its neighbors appears to have spurred the NRB to initiate this emergency enforcement action.

49. The NRB filed its 2013 EAO with the Court on April 23, 2013. By that emergency order, the NRB requested that the Court consider this enforcement action on an emergency basis. The NRB has specifically named each of the Respondents in its 2013 EAO. By reference to the 2008 AO, the NRB appears to also request that the Court direct Respondents to immediately cease operations of the gravel pit and to not renew its operations on the Project Tract until one or more of the Respondents applies for and receives an amendment to Permit #8B0018-2 that authorizes the operation of the gravel pit on the Project Tract.

## Conclusions

The extended history of this dispute over whether operation of the gravel pit on the Project Tract requires Act 250 approval has confused the parties' and this Court's analysis. But while the relevant facts were not at all clear when these proceedings began, it now appears that three simple legal issues govern our analysis. As explained in more detail below, we conclude that Respondents are jointly and severally liable for the unpermitted operation of the gravel pit on the Project Tract and must receive Act 250 permit approval before any one of them may continue those extraction operations.

We are compelled to first note that we are troubled by the NRB's actions, and lack of timely actions, in these related proceedings. We can understand why the NRB relied upon Mr. Dorr's representations that he owned the Project Tract in his individual name and that he was the operator of the gravel pit. However, NRB's failure to confirm the lawful title holder of the subject properties, particularly after Respondents and their attorney challenged NRB on this point, has added to the length, complexity, and confusion surrounding these proceedings.

NRB's deficiencies do not, however, justify the relief that Respondents request here: that the Court dismiss the pending NRB application and allow one or more of the Respondents to continue to operate the unpermitted gravel pit on the Project Tract.

One of the basic legal pillars of state land use regulation is that permitted development rights and responsibilities run with the land, thereby binding future owners of the property. At the emergency hearing, both attorneys and the presiding judge were at a loss when attempting to recall the foundation for this legal pillar; our absentmindedness was perhaps caused by the fact that this legal pillar is so relied upon and ingrained into our understanding of Act 250 precedent.

We first note that the deed by which Dorr Oil Co. received title to the Project Tract specifically references Land Use Permit #8B0018-2 and by that reference gave notice of and bound all subsequent owners of the Project Tract to the terms of the Permit and the jurisdictional obligations of Act 250. With this notice in the very deed by which it took title, Dorr Oil Co. and its officers and agents were on notice and obligated to conform to the Permit terms.

The Vermont Supreme Court, this Court, and the former Vermont Environmental Board (when it had the jurisdictional responsibilities this Court now holds) have all recognized that Act 250 jurisdiction and permit conditions "run with the land" and that future owners of permitted

*9*

properties assume those responsibilities when they accept title to the permitted property. See In re Quechee Lakes Corp., 154 Vt. 543, 550 at n. 5 (1990)(successors in interest are bound by permit conditions); In re Dover Valley Trail, No. 88-4-06 Vtec, slip op. at 3 (Vt. Super. Ct., Envtl Div. Jan. 16, 2007)(noting that Act 250 jurisdiction "runs with the land"); Re: New Haven Savings Bank, Docket No. E91-041, Order at 8 (Envtl. Bd., Nov. 23, 1992); Act 250 Rule 33(C)(3) (providing, in part, that "all permits shall run with the land, and shall be enforceable against the [original permittee] and all successors in interest).

Thus, when Mr. Dorr, as president, registered agent and partial owner of Dorr Oil Co. orchestrated his company's purchase of the Project Tract, both he and his company received notice of Permit #8B0018-2's applicability to the Project Tract and assumed responsibility to abide by the terms and conditions of that Permit.

Second, we conclude that it was reasonable and responsible for the NRB to rely upon Mr. Dorr's and his attorney's representations that he owned the Project Tract in his individual name and that he individually was responsible for the operation of the gravel pit. The record reflects that Mr. Dorr and his attorney made these representations on multiple occasions when responding to the District Coordinator's questions and when they offered follow-up information when the District Coordinator was responding to their requests to have the permit abandoned and when responding to the Moriartys' assertions that the subdivision permit was being violated. See NRB Exhibit 3 and Respondents' Exhibits G and J. Mr. Dorr and his then attorney began their representations even after they had orchestrated the purchase by Dorr Oil Co., as evidenced by their request in 1994 that the permit construction completion deadline be extended. See NRB Exhibit 6. Respondents appear to have disregarded the corporate structure they had established, at least in regards to their communication with the District Coordinator. We reject Respondents' assertion that the corporate structure that they disregarded should now act as a shield against their responsibility to abide by the terms of the subdivision permit.

Lastly, Respondents challenge the very basis of Act 250 jurisdiction over their gravel pit operations, noting that the District Commission never completed its response to Mr. Dorr's request to have the subdivision permit abandoned and asserting that the 2008 AO was not final. Respondents have clouded the procedural posture of these proceedings by their assertions. First, the record appears clear that the District Commission chose to table Mr. Dorr's request to have the subdivision permit deemed abandoned because of the Moriartys' assertions that Mr. Dorr was

violating that very permit. The Commission then directed the District Coordinator to investigate the Moriartys' assertions. Once the Coordinator completed his investigation, he issued the 2008 JO, concluding that Mr. Dorr had violated the terms of the subdivision permit. It appears clear that the Commission chose not to revisit Mr. Dorr's abandonment request because he had been found to be in violation of that permit. Abandonment would have jeopardized the District Coordinator's efforts to get Mr. Dorr to rectify his violations of that very permit. We see no error in the 2007 and 2008 actions of the District Commission or the District Coordinator.

The subdivision permit specifically states that it does not expire until October 1, 2020. Since it has not been deemed abandoned, it remains in full force and effect, even if the permittee has allowed the construction completion deadlines to expire. By conducting unpermitted gravel extraction operations on the Project Tract, Respondents have violated Permit #8B0018-2 and its amendments. Because Mr. Dorr has held himself out before the NRB and its staff as the owner of the Project Tract and operator of the gravel pit, he is liable for these permit violations. Dorr Oil Co, as actual title holder of the Project Tract, also is liable for compliance with the Permit terms. Since the gravel pit also encompasses the Adjacent Tract and Mr. Dorr orchestrated the taking of title to that Tract in the name of MGC. Inc., MGC, Inc. is prohibited from operating the gravel pit as well, since it encompasses both Tracts of land

### Summary of Determinations

For all the reasons stated above, the Court hereby determines that Respondent Donald Dorr, Dorr Oil Co., and MGC, Inc. have caused or allowed their gravel extraction operation to expand on to the 89-acre parcel of land that is governed by Land Use Permit #8B0018-2 and that such expansion constitutes a substantial and material change for the land use development authorized by the Permit. The Respondents are hereby directed to immediately cease all gravel extraction activities on the Project Tract until they receive authority to continue such extraction activities by virtue of an amendment or other change to Permit #8B0018-2. If respondents shall fail to abide by this Decision, they shall be jointly and severally liable for any penalties and further injunctive relief requested by the NRB and ordered by this Court.

This completes the current proceedings before this Court in this matter. A judgment Order accompanies this Decision.

## Rights to Appeal

All parties to this proceeding have the right to appeal this Decision. Such appeal must be filed with this Court with 10 (ten) business days of when the appealing party receives this Decision, pursuant to 10 V.S.A. § 8012(c)(5). If no appeal is filed within such 10 business days, this Decision shall become final. Id. Anybody having questions regarding the appeals process should consult the Vermont Rules of Appellate Procedure (V.R.A.P.) and the Vermont Rules for Environmental Court Proceedings (V.R.E.C.P.). A party may also petition the Supreme Court for a stay under the provisions of V.R.A.P. 8 and V.R.E.C.P. 5(k).

Done at Newfane, Vermont this 17th day of May, 2013.


_____
Thomas S. Durkin, Environmental Judge